**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

| | |
|---|---|
| DAVID JOHN HETZEL, M.D., ) | |
| ) | **Case No. 1:23-cv-152** |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| ANC HEALTHCARE, INC.; ANC ) | |
| MISSION HOSPITAL, INC.; HCA ) | **JURY TRIAL DEMANDED** |
| HEALTHCARE, INC.; HCA ) | |
| MANAGEMENT SERVICES, L.P.; ) | |
| MH MASTER HOLDINGS, LLLP; ) | |
| MH HOSPITAL MANAGER, LLC; ) | |
| MH MISSION HOSPITAL, LLLP; ) | |
| AND HCA HEALTHCARE ) | |
| MISSION FUND, LLC, ) | |
| ) | |
| Defendants. | |

COMES NOW Plaintiff David John Hetzel, M.D. ("Dr. Hetzel"), by and through his counsel, and brings this action against Defendants ANC Healthcare, Inc., ANC Mission Hospital, Inc., HCA Healthcare, Inc., HCA Management Services, L.P., MH Master Holdings, LLLP, MH Hospital Manager, LLC, MH Mission Hospital, LLLP, and HCA Healthcare Mission Fund, LLC (collectively, "Defendants"), alleging as follows:

## INTRODUCTION

1.      Dr. Hetzel is a board-certified gynecologic oncologist with decades of experience who, in early 2020, was employed by Defendants to perform oncological services and surgery at the Hope Women's Cancer Center at Mission Hospital in Asheville, North Carolina.

2.    In May 2020, Defendants erroneously reported Dr. Hetzel to the National Practitioner's Databank ("NPDB"), a national database operated by the United States Department of Health and Human Services that serves as a repository of information regarding medical malpractice payments and adverse actions against health care providers. The NPDB is relied upon by medical entities nationwide in making licensing, hiring and credentialing decisions.

3.    Defendants knew that the action underlying the report – a precautionary removal of Dr. Hetzel's privileges – was not appropriate for reporting and was not the result of any formal action or investigatory process, but rather was preliminary in nature during the pendency of an investigation. Ultimately, that investigation found that Dr. Hetzel had met the applicable standard of care, lifted the precautionary measure and restored Dr. Hetzel's privileges. Unfortunately, the damage had already been done.

4.    As a result of Defendants' false and improper report to the NPDB, Dr. Hetzel's reputation has been improperly and irreversibly marred. He has been unable to obtain employment, secure licensure in another state and, most importantly, use his medical skill to render critical, often life-saving care to the many cancer patients who need it.

5.    Dr. Hetzel brings claims against Defendants for libel *per se*, libel, breach of the covenant of good faith and fair dealing, interference with prospective economic advantage, intentional infliction of emotional distress, negligent infliction of emotional distress and punitive damages.

## PARTIES

6.      **Plaintiff David Hetzel** ("Dr. Hetzel") is a citizen and resident of the State of Arizona, who was at all relevant times a board-certified gynecologist and obstetrician as well as gynecologic oncologist.  From 2013 until 2020, Dr. Hetzel was employed as a physician by Defendants to work at Mission Hospital, located at 509 Biltmore Avenue, in Asheville, North Carolina.

7.      **Defendant ANC Healthcare, Inc.** is a North Carolina corporation with a principal office located at 425 West New England Avenue, Suite 300, Winter Park, Florida 32789. It may be served through its registered agent, Corporation Service Company, at its registered office and mailing address, which is 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608.

8.      Defendant ANC Healthcare, Inc. was originally incorporated in 1981 for the purposes of operating and performing the functions of Memorial Mission Hospital of Western North Carolina.  Defendant ANC Healthcare, Inc. has previously held the following legal names: Memorial Mission Medical Center Foundation, Inc; Memorial Mission Medical Center, Inc.; Mission Health System, Inc.; Mission Health, Inc. and Mission-St. Joseph's Health System, Inc.

9.      **Defendant ANC Mission Hospital, Inc.** is a North Carolina corporation with a principal office located at 425 West New England Avenue, Suite 300, Winter Park, Florida 32789. It may be served through its registered agent, Corporation Service Company, at its registered office and mailing address, which is 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608.

10.     Defendant ANC Mission Hospital, Inc. was originally incorporated in 1951 as a merger of Memorial Mission Hospital of Western North Carolina, Inc., Norburn Hospital, Inc. and Asheville Colored Hospital, Inc, with the trustees and board of Memorial Mission Hospital of Western North Carolina, Inc. as the controlling entity. Defendant ANC Mission Hospital, Inc. has previously held the following legal names: Memorial Mission Hospital of Western North Carolina, Inc; Memorial Mission Hospital, Inc.; Mission Hospital, Inc.; and Mission Hospitals, Inc.

11.     **Defendant HCA Healthcare, Inc.** is a publicly held Delaware corporation with a principal place of business in Nashville, Tennessee.  Its principal office address is One Park Plaza, Nashville, Tennessee 37203.  It may be served through its registered agent, The Corporation Trust Company, at its registered office and mailing address, which is Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

12.     HCA Healthcare, Inc. is the world's largest for-profit hospital chain.  It owns and operates over 200 hospitals in 21 states.  HCA's revenues were over $51 billion for 2020.  Its net income was over $3.7 billion in 2020.  Through its subsidiary, MH Master Holdings, LLLP, HCA Healthcare, Inc. purchased the assets of Mission in 2019.

13.     **Defendant HCA Management Services, L.P.** is a Delaware limited partnership with its principal place of business located at One Park Plaza, Nashville, Tennessee 37203.  It is registered to do business in North Carolina, and may be served through its registered agent, CT Corporation System, at its registered office and mailing address, which is 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27601.

14.     **Defendant MH Master Holdings, LLLP** is a Delaware limited partnership with its principal place of business located at One Park Plaza, Nashville Tennessee 37203. It is registered to do business in North Carolina as of August 23, 2018, and may be served through its registered agent, CT Corporation System, at its registered office and mailing address, which is 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27601.

15.     MH Master Holdings, LLLP's general partner is MH Hospital Manager LLC. MH Master Holdings, LLLP is a 99% limited partner in MH Mission Hospital, LLLP, and is authorized to do business under brand names including "Mission Health," "Mission Health System" and the "HCA" brand. Defendant MH Master Holdings, LLLP identifies itself as and holds itself out as being part of the North Carolina division of HCA Healthcare, Inc.

16.     **Defendant MH Hospital Manager, LLC** is a Delaware limited partnership with its principal place of business located at One Park Plaza, Nashville Tennessee 37203. It is registered to do business in North Carolina as of August 22, 2018, and may be served through its registered agent, CT Corporation System, at its registered office and mailing address, which is 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27601.

17.     Defendant MH Hospital Manager uses the assumed business name, "North Carolina Division," pursuant to an assumed name certificate dated April 22, 2019, filed with the Buncombe County Register of Deeds. It is an entity with control and management duties for Mission Hospital.

18.     **Defendant MH Mission Hospital, LLLP** is a Delaware limited liability limited partnership, with a principal place of business located at 509 Biltmore Avenue, Asheville, North Carolina 28801. It may be served through its registered agent, CT Corporation System, at its registered office and mailing address, which is 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27615. It is an entity with control and management duties for Mission Hospital.

19.     **Defendant HCA Healthcare Mission Fund, LLC** is a Delaware corporation with a principal office located at One Park Plaza, Nashville, TN 37203. It may be served through its registered agent, CT Corporation System, at its registered office and mailing address, which is 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27615-6417. The sole member of is Health Insight Capital, LLC, which has a principal place of business located at One Park Plaza, Nashville, TN 37203.

20.     Upon information and belief, all of these Defendants share control and management responsibility over Mission Hospital, its physicians and the issues raised in this Complaint.

## JURISDICTION AND VENUE AND CONDITIONS PRECEDENT

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendants in this matter and because the amount in controversy exceeds $75,000.00.

22.     Defendants are subject to the personal jurisdiction of this Court as they either are companies incorporated in the State of North Carolina with a principal place of business within the jurisdictional district of this Court or are regularly present in and/or

regularly transact business in the State of North Carolina within the jurisdictional district of this Court.

23.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1), because Defendant MH Mission Hospital, LLLP resides in this judicial district.  Moreover, much of the conduct that is the subject of this lawsuit occurred and all Defendants regularly transact business at or near Mission Hospital, which is located in Asheville, North Carolina, within this judicial district.

24.     This lawsuit was filed within all applicable statutes of limitations and repose.

25.     Dr. Hetzel has exhausted all administrative remedies available pursuant to 45 C.F.R. § 60.21.

## FACTUAL ALLEGATIONS

### Background

26.     Dr. Hetzel was the first Fellowship-trained and Boarded gynecologic oncologist in Western North Carolina. He joined the newly founded Hope Women's Cancer Center in Asheville, North Carolina, which did most of its Inpatient work at Mission Hospital on March 1, 1997.  They grew the practice and Hope Women's Cancer Center to include consults, chemotherapy infusions, research/clinical trials, imaging, mammograms, stereotactic biopsies, and surveillance exams. The consolidated services and expertise attracted patients to Asheville - the community and Mission Hospital certainly benefitted from Hope Women's Cancer Center.

27.     In his decades-long practice, Dr. Hetzel routinely handled difficult cases of gynecologic cancerous tumors, which often required complex surgical measures including procedures to debulk identified tumors.  He had been doing this type of surgery for over 25 years.  Due to the nature of theses tumors, injury to surrounding organs – either intraoperatively or naturally – is unfortunately common.

28.     Dr. Hetzel resigned from Mission Hospital in February 2019, but that resignation was not to become effective until July 2020, when his partners could replace him with a newly trained gynecologic oncologist.

29.     Dr. Hetzel obtained prospective employment as the Chief of Gynecologic Oncology at Texas Teach El Paso Tenet Hospitals.

30.     Defendant HCA Healthcare, Inc., a for-profit organization, purchased Defendant ANC Healthcare, Inc. and other Mission Health entities in or around March 2018 for $1.5 billion.  Defendant HCA Healthcare, Inc. took control of Defendant ANC Healthcare, Inc. and other Mission Health entities, including Mission Hospital, on February 1, 2019.

31.     On January 13, 2020, Dr. Hetzel received from Defendants a letter placing him on "Final Warning Status" for an alleged lack of participation in Mission Cancer Center Breast conferences.  They failed to realize, however, that Dr. Hetzel regularly attended a second weekly breast conference located at the Hope Women's Cancer Center.  Despite not keeping the attendance of this second conference – and not having been otherwise made aware of any attendance concern – Defendants notified Dr. Hetzel he was being placed on Final Warning Status.

## Credentialing Issues and Committee Review

32.     On March 2, 2020, Dr. Hetzel performed a surgery to debulk a massive gynecologic tumor that he observed upon entering the patient's abdomen.  He successfully removed the anterior abdominal tumor, resected the cancerous omentum and removed tumor from the right and left colic gutter.  He resected the uterus, ovaries and fallopian tubes, then dissected the largest of the tumors, debulking the tumor in the pelvic area to the extent that could be accomplished.

33.     During the procedure, Dr. Hetzel also observed that the tumor heavily affected the bowel and colon and understood that an enterotomy caused by tumor had developed in the very proximal small bowel near the duodenum.  Given the nature of the tumor and its proximity to the bowel, it was impossible to bypass it without mobilizing the duodenum. Dr. Hetzel made the intraoperative decision to involve a hepatobiliary surgeon and surgical oncologist.  The hepatobiliary surgeon and surgical oncologist did not mobilize and bypass the bowel at first but rather continued to debulk the tumor to such an extent that they ultimately removed the patient's colon and all of the small bowel with a high blood loss – which was a complication and risk of the surgery.

34.     The next day, by letter from H. Michael Frisch, MD, Chief of Staff of Mission Hospital, and Chad Patrick, Chief Executive Officer of Mission Hospital, Defendants placed Dr. Hetzel's clinical privileges on "precautionary suspension" because of the reported complication and two other intraoperative organ injuries to patients in the six months prior.

35.     Dr. Hetzel was puzzled by the decision, given that his portion of the surgery had been performed successfully and that there had been no substantive review of the intraoperative complications.

36.     At Mission Hospital, a "precautionary suspension is not in and of itself a final professional review action that is reportable, but rather an interim step to protect patients." § 8.4, Medical Staff Bylaws of MH Mission Hospital, LLLP; *see also*, § 4.6.1(b), Policy on Appointment, Reappointment, and Clinical Privileges of MH Mission Hospital, LLLP.

37.     The Credentials Committee ("Committee") was scheduled to review and consider this precautionary suspension and was supposed to meet with the Dr. Hetzel to hear his side of the story.  He was not contacted for such meeting.

38.     The Committee was comprised of the following individuals who participated in and/or sanctioned the conduct described herein: Dr. Scott Joslin, Dr. Garth Davis, Dr. William Harlan, Dr. Melissa Hicks, Dr. Stace Horein, Dr. Lemuel Kirby, Dr. Scott Ramming, Dr. Theodor Rhenex, Dr. Gregg Stashenko, Dr. Derek Tomes, Dr. Harvey Weiner and N.P. Katherine Shulman.  None of the members of the Committee were from Dr. Hetzel's group or performed services similar to Dr. Hetzel.

39.     On March 10, 2020, the Committee met to consider the precautionary suspension, without first allowing Dr. Hetzel a meeting.  At this time, the Committee modified his precautionary suspension to a lesser sanction with conditions.

40.     By letter of March 12, 2020, Dr. Hetzel was informed that the Investigative Committee would further review the March 2, 2020, surgery including: (i) the general

nature and existing evidence related to "the concern," (ii) preoperative planning in "this case," (iii) Dr. Hetzel's surgical technique, (iv) availability for postoperative consultation with the patient's family, and (v) other issues as encountered in the investigation. The letter also informed Dr. Hetzel that he would have an opportunity to meet with the Investigative Committee prior to any further decision.

41.     Dr. Hetzel requested a meeting with the Investigative Committee the following week. Again, no hearing or meeting with Dr. Hetzel was scheduled.

42.     On March 25, 2020, Dr. Hetzel received a letter from Mr. Patrick and Scott Joslin, M.D., Credentials Committee Chair, stating that the Committee had again imposed a precautionary suspension of Dr. Hetzel's privileges pending the full investigation.

43.     On April 3, 2020, Dr. Hetzel provided a response letter to the Committee explaining the reasonableness of his actions, which fell within the standard of care for a physician with his training and experience. It addressed each of the issues raised for investigation by the Committee's March 12, 2020, letter.

44.     On April 10, 2020, Dr. Hetzel met with the Investigating Committee. On April 17, 2020, and April 22, 2020, Dr. Hetzel provided the Investigating Committee additional written responses.

45.     Following this investigation, Defendants concluded that the clinical care that was the subject of the initial precautionary suspension did not warrant a limitation on Dr. Hetzel's clinical privileges.

46.     On April 23, 2020, the Committee modified Dr. Hetzel's precautionary suspension and fully restored his privileges, subject to Dr. Hetzel's satisfactory completion of a fitness for duty evaluation.

47.     On May 4, 2020, Defendants initially reported Dr. Hetzel's investigation to the National Practitioner's Databank ("NPDB") for removal of privileges due to a professional review action under 45 C.F.R. § 60.12, and/or for negative actions or findings taken by peer review organizations under 45 C.F.R. § 60.12.  This report was false and contrary to 45 C.F.R. § 60.5.

48.     Defendants had actual knowledge, at the time they reported Dr. Hetzel to the NPDB, that Dr. Hetzel's clinical privileges had been revoked as a precautionary measure and not as the result of a professional review action as that term is defined in 45 C.F.R. § 60.3.

49.     Defendants also had actual knowledge, at the time they reported Dr. Hetzel to the NPDB, that Dr. Hetzel's clinical privileges had not been revoked as the result of a negative action taken by a peer review organization as that term is defined in 45 C.F.R. § 60.3.

50.     Defendants further had actual knowledge that, prior to the report, the Committee had resolved to revoke the precautionary suspension and fully restore Dr. Hetzel's clinical privileges.

51.     On June 5, 2020, after an investigation of the matter was completed, the Mission Hospital Medical Executive Committee ("MEC") met, evaluated the results of its internal investigation and concluded that the clinical care that was the subject of the initial

precautionary suspension did not warrant a limitation on Dr. Hetzel's clinical privileges. On this day, the MEC made a final decision to lift the precautionary suspension of Dr. Hetzel's privileges and to reinstate his clinical privileges.

52.     Dr. Hetzel was notified of this decision on June 9, 2020.

53.     On June 16, 2020, Dr. Hetzel received a "letter of guidance" from Dr. Joslin on behalf of the Committee, which outlined vague recommendations for improvement.

54.     Dr. Hetzel elected not to return to work.

55.     On July 9, 2020, Defendants submitted a Revision to Action notice to NPDB regarding its initial filing related to precautionary suspension to indicate that Dr. Hetzel's. It did not, at any point, indicate the original filing of the report was made in error or request the revocation or removal of such improper report.

56.     On May 11, 2021, Dr. Hetzel was notified by letter that Defendants – namely MH Mission Hospital, LLLP – had decided to "neither correct nor void the Initial Adverse Action Report filed on May 4, 2020 concerning the precautionary suspension of Dr. David Hetzel's clinical privileges."

57.     On October 28, 2021, the North Carolina Medical Board completed its investigation of the same report and found no violation of the Medical Practices Act and that the management of the relevant care met the standard of care.  The North Carolina Medical Board further determined that the review did not need to be reported to any data bank.

## Reporting to the NPDB

58.     The NPDB was created by United States Congress as a workforce tool to prevent practitioners from moving state to state without disclosure or discovery of previous medical malpractice payments and adverse actions.  Federal regulations require eligible entities to report to the NPDB under specific circumstances.  Eligible entities are also authorized to query the NPDB.  The purpose of the NPDB is to promote quality health care, as well as to deter fraud and abuse within health care delivery systems.

59.     Pursuant to 42 U.S.C. § 11133, a hospital must report to the NPDB a professional review action that it has taken based on reasons related to professional competence or conduct that adversely affect clinical privileges for a period longer than 30 days.

60.     Under 42 U.S.C. § Section 1921, negative actions or findings by peer review organizations also must be reported to the NPDB.

61.     However, investigations for professional review purposes or by peer review organizations should not be reported to the NPDB unless they result in the physician's voluntary surrender of clinical privileges or failure to renew clinical privileges while under investigation or to avoid investigation.

62.      Moreover, under 45 C.F.R. § 60.3:

   a) a "formal peer review process" means the conduct of professional review activities through formally adopted written procedures which provide for adequate notice and an opportunity for a hearing; and

b) a "professional review action" means an action or recommendation of a health care entity:

    i. Taken in the course of professional review activity;

    ii. Based on the professional competence or professional conduct of an individual health care practitioner which affects or could affect adversely the health or welfare of a patient or patients; and

    iii. Which adversely affects or may adversely affect the clinical privileges or membership in a professional society of the health care practitioner.

63.    Pursuant to 45 C.F.R. § 60.6, "entities are responsible for the accuracy of information which they report to the NPDB. If errors or omissions are found after information has been reported, the person or entity which reported it must send an addition or correction to the NPDB."

### Damages

64.    At no time since its original reporting and determination that Dr. Hetzel's care met was appropriate have Defendants withdrawn their report to the NPDB or corrected the errors of their original report.

65.    In December 2020, Dr. Hetzel was informed that Tenet would not give him credentials due to the NPDB report and his offer as the Chief of Gynecologic Oncology at Texas Tech El Paso Tenet Hospitals was withdrawn.

66.     Dr. Hetzel then obtained a position as the Chief of Gynecologic Oncology at University of Texas Health East Texas.  However, that job offer process stalled in March 2021, after the hospital learned of the NPDB report.

67.     From March 2021 through as late as April 2023, Dr. Hetzel has continued to be denied positions as a gynecologic oncologist, which upon information and belief were due to the NPDB report.  These denied opportunities included positions at the following hospitals: Marshfield Clinic (Marshfield, Wisconsin), Virginia Hospital System, Gunderson Clinic (La Crosse, Wisconsin), CARTI Health System (Little Rock, Arkansas), Genesis Care (Venice and Lakewood Beach, Florida), Mercy Health (Rockford, Illinois), Ironwood Cancer and Research Center (Phoenix, Arizona), Advocate Aurora Health (Milwaukee, Wisconsin), Meritus Health (Hagerstown, Massachusetts), UpState Medical University (Syracuse, New York), Northwell Health (Long Island, New York), University of Miami and Holston Valley Hospital (Kingsport, Tennessee).

68.     In January 2022, Dr. Hetzel was hired at Ironwood Cancer and Research Center in Phoenix, Arizona, pending a background check and licensure in Arizona.  Dr. Hetzel was informed on October 1, 2022, that Ironwood's offer was being withdrawn due to NPDB and temporary suspension, which caused a growing unemployment gap and delays in licensure.

69.     Dr. Hetzel also applied for a medical license in the State of Arizona, which was denied because of the NPDB report and temporary suspension which led to a greater than two-year unemployment gap. The Arizona Medical Board offered Dr. Hetzel only a probationary license, which would have led to yet another inappropriate NPDB entry.

70. Despite repeated and exhaustive attempts to mitigate his losses, Dr. Hetzel has suffered substantial damages as a result of wrongful report Defendants made to the NPDB, including past and future lost wages, reputational and professional damages, loss of enjoyment of life, severe emotional distress, and other economic and non-economic harms.

## COUNT I
### Libel *Per Se*
### Title VII, 42 U.S.C. § 2000e-2(a)
### (Against All Defendants)

71. The allegations of paragraphs 1 through 70 are realleged and incorporated by reference as if fully set forth herein.

72. Defendants' actions described herein constitute publication of false and defamatory statements and information about Dr. Hetzel to third persons – namely, the NPDB and, relatedly, all entities with authorization to query the NPDB.

73. Specifically, Defendants wrote and possessed in written form a statement reflecting that Dr. Hetzel had his privileges removed due to a professional review action under 45 C.F.R. § 60.12 and/or for negative actions or findings taken by peer review organizations under 45 C.F.R. § 60.12.

74. Defendants published these statements knowing that they were false.

75. Defendants' statements constitute libel *per se* in that they impeach Dr. Hetzel in his trade or profession as the statements specifically address and impugn Dr. Hetzel's capacity as a physician.

76. The libel *per se* is ongoing in nature, and Defendants continue to refuse to

correct or rescind the libelous NPDB report, which continues to be republished to perspective employers upon request.

77. As a direct and proximate result of Defendants' libelous statement, Dr. Hetzel continues to be denied job placement as a chief or staff gynecologic oncologist, including the following denials and/or revocations of offers of employment:

     a) Texas Tech El Paso Tenet Hospitals (on December 22, 2020);

     b) Marshfield Clinic (March 9, 2021);

     c) University of Texas Health East Texas  (March 18, 2021);

     d) Virginia Hospital System (April 1, 2021);

     e) Gunderson Clinic (July 7, 2021);

     f) CARTI Health System (October 1, 2021);

     g) Genesis Care (November 1, 2021);

     h) Mercy Health (November 16, 2021);

     i) Ironwood Cancer and Research Center (January 19, 2022);

     j) Advocate Aurora Health (August 22, 2022);

     k) Meritus Health (September 26, 2022);

     l) UpState Medical University (January 31, ,2023);

     m) Northwell Health (February 23, 2023);

     n) University of Miami (February 28, 2023); and

     o) Holston Valley Hospital (April 15, 2023).

78. As a direct and proximate result of Defendants' libelous statements to the NPDB, Dr. Hetzel has suffered damages, including but not limited to, past and future lost

wages, anxiety, embarrassment, loss of career, damage to reputation and career, mental anguish, loss of enjoyment of life and other economic and non-economic harms.

79.    Also, as a direct and proximate result of Defendants' libelous statements, Dr. Hetzel is entitled to all legal and equitable remedies available for Defendants' libel *per se* of him in an amount to be determined by a jury, which in any event exceeds Seventy-Five Thousand Dollars ($75,000.00).

**COUNT II**
**Libel**
**(Against All Defendants)**

80.    The allegations of paragraphs 1 through 79 are realleged and incorporated by reference as if fully set forth herein.

81.    Defendants' actions described herein constitute publication of false and defamatory statements and information about Dr. Hetzel to third persons – namely, the NPDB and, relatedly, all entities with authorization to query the NPDB.

82.    Specifically, Defendants wrote and possessed in written form a statement reflecting that Dr. Hetzel had his privileges removed due to a professional review action under 45 C.F.R. § 60.12 and/or for negative actions or findings taken by peer review organizations under 45 C.F.R. § 60.12.

83.    Defendants published these statements knowing that they were false.

84.    Defendants' statements were intended to impeach, prejudice, discredit and/or reflect unfavorably upon Dr. Hetzel in his trade or profession as a physician, as this is the entire purpose of and resultant effect of the NPDB.

85.    Defendants' statements tend to and were intended to subject Dr. Hetzel to

ridicule, contempt and/or disgrace.

86.    The libel is ongoing in nature, and Defendants continue to refuse to correct or rescind the libelous NPDB report, which continues to be republished to perspective employers upon request.

87.    As a direct and proximate result of Defendants' libelous publication, Dr. Hetzel continues to be denied job placement as a chief or staff gynecologic oncologist, including the following denials and/or revocations of offers of employment:

   a) Texas Tech El Paso Tenet Hospitals (on December 22, 2020);

   b) Marshfield Clinic (March 9, 2021);

   c) University of Texas Health East Texas  (March 18, 2021);

   d) Virginia Hospital System (April 1, 2021);

   e) Gunderson Clinic (July 7, 2021);

   f) CARTI Health System (October 1, 2021);

   g) Genesis Care (November 1, 2021);

   h) Mercy Health (November 16, 2021);

   i) Ironwood Cancer and Research Center (January 19, 2022);

   j) Advocate Aurora Health (August 22, 2022);

   k) Meritus Health (September 26, 2022);

   l) UpState Medical University (January 31, ,2023);

   m) Northwell Health (February 23, 2023);

   n) University of Miami (February 28, 2023); and

   o) Holston Valley Hospital (April 15, 2023).

88.     As a direct and proximate result of Defendants' libelous statements to the NPDB, Dr. Hetzel has suffered damages, including but not limited to, past and future lost wages, anxiety, embarrassment, loss of career, damage to reputation and career, mental anguish, loss of enjoyment of life and other economic and non-economic harms.

89.     Also, as a direct and proximate result of Defendants' libelous statements, Dr. Hetzel is entitled to all legal and equitable remedies available for Defendants' libel of him in an amount to be determined by a jury, which in any event exceeds Seventy-Five Thousand Dollars ($75,000.00).

## COUNT III
**Breach of Covenant of Good Faith and Fair Dealing**
**(Against All Defendants)**

90.     The allegations of paragraphs 1 through 89 are realleged and incorporated by reference as if fully set forth herein.

91.     By virtue of the contractual employment relationship between Defendants and Dr. Hetzel, Defendants had an implied duty of good faith and fair dealing to Dr. Hetzel.

92.     Defendants have breached their implied duty of good faith and fair dealing by falsely and improperly reporting Dr. Hetzel to the NPDB prior to and without a proper peer review or professional review investigation.

93.     Defendants have further breached their implied duty of good faith and fair dealing by refusing to provide adequate and/or legitimate explanations for their delays and failures to remedy the ongoing false and improper report to the NPDB once they completed the peer review or professional review action and found Dr. Hetzel had not

breached the applicable standards of professional medical care. This breach is ongoing in nature.

94. As a direct and proximate result of the breach, Dr. Hetzel continues to be denied job placement as a chief or staff gynecologic oncologist, including the following denials and/or revocations of offers of employment:

    a) Texas Tech El Paso Tenet Hospitals (on December 22, 2020);

    b) Marshfield Clinic (March 9, 2021);

    c) University of Texas Health East Texas  (March 18, 2021);

    d) Virginia Hospital System (April 1, 2021);

    e) Gunderson Clinic (July 7, 2021);

    f) CARTI Health System (October 1, 2021);

    g) Genesis Care (November 1, 2021);

    h) Mercy Health (November 16, 2021);

    i) Ironwood Cancer and Research Center (January 19, 2022);

    j) Advocate Aurora Health (August 22, 2022);

    k) Meritus Health (September 26, 2022);

    l) UpState Medical University (January 31, ,2023);

    m) Northwell Health (February 23, 2023);

    n) University of Miami (February 28, 2023); and

    o) Holston Valley Hospital (April 15, 2023).

95. Defendants have further breached their implied duty of good faith and fair dealing by engaging in the unfair and deceptive practices described herein, thereby

requiring Dr. Hetzel to expend an unreasonable amount of time and resources in pursuing reversal of their improper report directly with the NPDB.

96.     By reason of the foregoing and as otherwise described herein, Defendants breached the covenant of good faith and fair dealing they owed to Dr. Hetzel.

97.     These breaches of the duty of good faith and fair dealing were designed to and/or did in fact injure Dr. Hetzel.  They have caused him denial of employment opportunities, refusal of licensure, anxiety, embarrassment, loss of career, damage to reputation and career, mental anguish, loss of enjoyment of life and other economic and non-economic harms.

98.     As a direct and proximate result of this breach, Dr. Hetzel has suffered damages, including but not limited to, past and future lost wages, reputational and professional damages, loss of enjoyment of life and other economic and non-economic harms.

99.     Also, as a direct and proximate result of this breach, Dr. Hetzel is entitled to all legal and equitable remedies available for Defendants' breach of the implied covenant of good faith and fair dealing in an amount to be determined by a jury, which in any event exceeds Seventy-Five Thousand Dollars ($75,000.00).

## COUNT IV
### Tortious Interference with Prospective Economic Advantage
### (Against All Defendants)

100.    The allegations of paragraphs 1 through 99 are realleged and incorporated by reference as if fully set forth herein.

101. Plaintiff had a business relationship or expected to establish one with prospective third-party employers in the health care field, including but not limited to:

    a) Texas Tech El Paso Tenet Hospitals;

    b) Marshfield Clinic;

    c) University of Texas Health East Texas;

    d) Virginia Hospital System;

    e) Gunderson Clinic;

    f) CARTI Health System;

    g) Genesis Care;

    h) Mercy Health;

    i) Ironwood Cancer and Research Center;

    j) Advocate Aurora Health;

    k) Meritus Health;

    l) UpState Medical University;

    m) Northwell Health;

    n) University of Miami; and

    o) Holston Valley Hospital.

102. The prospective employment or partnership relationship with prospective third-party employers in the health care field, including but not limited to those listed herein, was likely or certain to benefit the Plaintiff financially.

103. Defendants were aware that Dr. Hetzel would or could seek employment with other health care providers.

104. Defendants intentionally interfered with these potential relationships by making the false and improper report to the NPDB.

105. Such interference was improper.

106. As a direct and proximate result of Defendants' misconduct, Dr. Hetzel has been unable to obtain other employment and continues to be denied job placement as a chief or staff gynecologic oncologist, including the following denials and/or revocations of offers of employment:

    a) Texas Tech El Paso Tenet Hospitals (on December 22, 2020);

    b) Marshfield Clinic (March 9, 2021);

    c) University of Texas Health East Texas (March 18, 2021);

    d) Virginia Hospital System (April 1, 2021);

    e) Gunderson Clinic (July 7, 2021);

    f) CARTI Health System (October 1, 2021);

    g) Genesis Care (November 1, 2021);

    h) Mercy Health (November 16, 2021);

    i) Ironwood Cancer and Research Center (January 19, 2022);

    j) Advocate Aurora Health (August 22, 2022);

    k) Meritus Health (September 26, 2022);

    l) UpState Medical University (January 31, ,2023);

    m) Northwell Health (February 23, 2023);

    n) University of Miami (February 28, 2023); and

    o) Holston Valley Hospital (April 15, 2023).

107.    As a direct and proximate result of Defendants' tortious conduct, Dr. Hetzel has also been denied full licensure by the Arizona Medical Board, making future business opportunities increasingly and exceedingly more difficult to secure.

108.    As a direct and proximate result of Defendant' actions, Dr. Hetzel has suffered damages, including but not limited to, past and future lost wages, reputational and professional damages, loss of enjoyment of life and other economic and non-economic harms.

109.    Also, as a direct and proximate result of the actions of Defendants, Dr. Hetzel is entitled to all legal and equitable remedies available for Defendants' tortious interference with prospective economic advantage in an amount to be determined by a jury, which in any event exceeds Seventy-Five Thousand Dollars ($75,000.00).

**COUNT V**
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

110.    The allegations of paragraphs 1 through 109 are realleged and incorporated by reference as if fully set forth herein.

111.    Defendants intentionally inflicted emotional distress upon Dr. Hetzel.

112.    Defendants each engaged in extreme and outrageous conduct by knowingly and improperly reporting Dr. Hetzel to the NPDB, recognizing the impact that such a report would have on his career as a physician.

113.    Defendants knew or should have known that severe emotional distress would likely result from their conduct.  Defendants' conduct was recklessly indifferent to the likelihood that it would cause Dr. Hetzel severe emotional distress.

114.    Defendants' conduct did, in fact, cause Dr. Hetzel severe emotional distress.

115.    As a direct and proximate result of Defendants' intentional misconduct, Dr. Hetzel has suffered, continues to suffer and will in the future continue to suffer severe emotional distress, including anxiety, embarrassment, depression, loss of career, damage to reputation and career, mental anguish and loss of enjoyment of life, as well as medical expenses.

116.    Dr. Hetzel's severe emotional distress was the actual and proximate result of Defendants' actions and inactions through their managerial employees and the consequences proximately caused by them.

117.    Dr. Hetzel is entitled to recover all damages available under the law, including compensatory and economic damages in an amount to be determined by a jury.

## COUNT VI
### Negligent Infliction of Emotional Distress
### (Against All Defendants)

118.    The allegations of paragraphs 1 through 117 are realleged and incorporated by reference as if fully set forth herein.

119.    In the alternative to Count V, *supra*, Defendants negligently inflicted emotional distress upon Dr. Hetzel.

120.    Defendants had a duty of reasonable care to all physicians, including Dr. Hetzel, within their employ to ensure reports to the NPDB were made properly and accurately.

121.    Defendants breached that duty when they did not exercise reasonable care in the correct and truthful reporting of Dr. Hetzel to the NPDB and, as described herein,

improperly reported Dr. Hetzel to the NPDB prior to a full peer review or professional review action that included due process.

122.   Dr. Hetzel's severe emotional distress was the reasonably foreseeable result of Defendants' breach of its duty of reasonable care to Dr. Hetzel.

123.   As a direct and proximate result of Defendants' negligence, Dr. Hetzel has suffered, continues to suffer and will in the future continue to suffer severe emotional distress, including anxiety, embarrassment, depression, loss of career, damage to reputation and career, feelings of helplessness and hopelessness, suffering, mental anguish and loss of enjoyment of life, as well as medical expenses.

124.   Dr. Hetzel's severe emotional distress was the actual and proximate result of Defendants' actions and inactions through their managerial employees and the consequences proximately caused by them.

125.   Dr. Hetzel is entitled to recover all damages available under the law, including compensatory and economic damages in an amount to be determined by a jury.

## COUNT VI
### Punitive Damages
### (Against All Defendants)

126.   The allegations of paragraphs 1 through 125 are realleged and incorporated by reference as if fully set forth herein.

127.   The conduct of Defendants, by and through their managers and officers as described herein, constituted willful and wanton conduct and reckless disregard of Dr. Hetzel's rights and was without provocation, legal justification or any excuse.

128.     Defendants' managers and officers participated in and condoned such conduct.

129.     As such, punitive damages should be awarded against Defendants to deter it and others from committing similar wrongful acts.

130.     Dr. Hetzel seeks and is entitled to recover punitive damages against Defendants in the full amount permitted under the law – three-times compensatory damages or $250,000.00, whichever is greater.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff David John Hetzel requests that this Court enter judgment in her favor and against all Defendants, jointly and severally, and further:

(a)     Award Dr. Hetzel compensatory damages to be determined by a jury, plus demonstrated past and future pecuniary damages on each of the above-stated counts; and

(b)     Award Dr. Hetzel punitive and exemplary damages, in an amount to be determined by a jury, on each of the above-stated counts; and

(c)     Award Dr. Hetzel appropriate past and future lost income; and

(d)     Award Dr. Hetzel attorneys' fees and costs of this action as allowable by law;

(e)     Tax the prejudgment interest of the damages, attorneys' fees and costs of this action to the Defendants, as of the date of the filing of this Complaint; and

(f)     Award Dr. Hetzel such other and further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury with respect to each claim in this Complaint.

This the 9th day of June, 2023.

Respectfully submitted,

**EDWARDS BEIGHTOL, LLC**

 /s/ Catharine E. Edwards
Catharine E. Edwards
N.C. State Bar No. 52705
Kristen L. Beightol
N.C. State Bar No. 27709
P.O. Box 6759
Raleigh, NC 27628
Phone: (919) 636-5100
cee@eblaw.com
klb@eblaw.com