IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. 1:23-cv-152-MR-WCM

| | |
|---|---|
| DAVID JOHN HETZEL, M.D., | |
| Plaintiff, | **REPLY TO MISSION HOSPITAL'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL** |
| v. | |
| MH MISSION HOSPITAL, LLLP; | |
| Defendant. | |

Defendant Mission Hospital's[1] Response fails to accept that Dr. Hetzel still has live, pending and viable libel, libel per se and tortious interference claims. Defendant admits that these claims derive from its reporting of Dr. Hetzel to the National Practitioner Data Bank ("NPDB"), a federal product, and that it asserts a related federal immunity; yet, it puzzlingly suggests this case has nothing do to with federal law. (Dkt. 4, Ame. Compl.; Dkt. 43, Order; Dkt. 55, Dr. Hetzel's Mem.[2] at 14-15.) Through this strained analysis, Defendant attempts to evade production of the information squarely relevant to Dr. Hetzel's claims. But the very clear law in the Fourth Circuit – and even the Northern District of Indiana case Defendant relies upon (Dkt. 58 at 11) – Dr. Hetzel's[3] Motion to Compel[4] should be GRANTED and the requested discovery extension permitted.

---

[1] "Mission Hospital" and "Defendant" refer herein to Defendant MH Mission Hospital, LLLP.
[2] Herein, Memorandum in Support of Plaintiff's Motion to Compel and for Extension of Time is herein referred to as "Dr. Hetzel's Memorandum" or "Dr. Hetzel's Mem."
[3] Plaintiff David John Hetzel, M.D. is herein referred to as "Dr. Hetzel."
[4] Plaintiff's Motion to Compel and for Extension of Time to Complete Discovery is herein referred to as "Motion to Compel" or "Motion."

## FACTUAL BACKGROUND

Dr. Hetzel refers to his Memorandum timeline (Dkt. 55 at 3-12) for the relevant facts other than to correct a misleading statement in the opening paragraph of Defendant's Response. Defendant alleges that Dr. Hetzel has somehow evaporated his claims that it made false statements by stating that "[i]t's not that there's an inaccuracy about the words on the page ... [T]here should be nothing on that page and it shouldn't exist." (Dkt. 58, Reply, at 1.) But that allegation misapprehends Dr. Hetzel's statement – that the falsity ***is the report*** itself. Dr. Hetzel should not have been reported to the NPDB, and it is that false and misleading reporting that has torpedoed his career and life. Because as a result he has been unable to secure employment, now lives in a trailer, at times is unable to afford rent and has suffered phone and power cutoffs during winter months due to insufficient funds.[5]

## ARGUMENT AND CITATION OF AUTHORITY

There is no need to refer to law from another circuit, as Defendant suggests, for guidance on this Motion. The Fourth Circuit has been clear. Even if it was not, the Northern District of Indiana case cited by Defendant Mission Hospital gives the same guidance. Under any analysis, production is required because (1) no privilege applies and (2) Defendant failed to make the requisite motion for the protection it now belatedly seeks.

---

[5] Dr. Hetzel testified as follows:

> And I've had to live, you know, in a difficult, in a difficult way, with -- thankfully, I have a nice landlord. I was three months behind on my rent at this old trailer I rent, and she let me go. And my phone got cut off. And, you know, it was the end of winter, and I had lived for almost two months -- Duke Power cut my power off. So I had to get candles, and I had to sleep in a winter sleeping bag.

(Dr. Hetzel Dep. at 204:16-23.)

### A. Controlling Fourth Circuit Law Is Clear and Requires Production.

The Western District has long acknowledged that "[t]he Fourth Circuit has defined the applicable law concerning a federal peer review privilege." *Braswell v. Haywood Reg'l Med. Ctr.*, 352 F. Supp. 2d 639, 651 (W.D.N.C. 2005)(citing *Virmani v. Novant Health Inc.,* 259 F.3d 284 (4th Cir. 2001). In *Virmani*, the Fourth Circuit looked at "whether the interest in promoting candor in medical peer review proceedings outweighs the need for probative evidence in a discrimination case." *Virmani*, 259 F.3d at 287 (footnote omitted). The facts before the Fourth Circuit in *Virmani* are like those here. They involve allegations regarding a peer review process and a defense argument that the process is protected. *Virmani* is not only useful here, it is controlling.

Specifically, Dr. Virmani was an obstetrician-gynecologist, who was granted medical staff membership and clinical privileges at two hospitals under the Novant umbrella – Presbyterian Hospital and Presbyterian Hospital Matthews. *Virmani,* 259 F.3d at 285 (footnote omitted). During a laparoscopic procedure in 1994, Dr. Virmani inadvertently punctured the patient's iliac artery, resulting in an emergency. *Id*. Though Dr. Virmani argued the puncture was a known complication, a series of proceedings resulted in the suspension of his staff membership and clinical privileges. *Id*. Thus, Dr. Virmani filed an action in federal court alleging that the termination of his privileges constituted discrimination based on his race and national origin in violation of 42 U.S.C.A. §§ 1981 and 1985. *Id*. at 285-286. He also alleged state law claims for intentional and negligent infliction of emotional distress. *Id*. at 286. In the litigation, Dr. Virmani sought "all peer review records related to all reviews of physicians for any reason, during the

twenty years preceding his request." *Id*. Novant – unlike Defendant Mission Hospital – ***moved for protective order***, citing N.C. Gen. Stat. § 131E-95(b) and Fed. R. Evid. 501. *Id*. The district court denied Novant's motion, refusing to recognize a privilege for medical peer review materials. *Id*. at 286 (footnote omitted). The Fourth Circuit acknowledged that the evidence Dr. Virmani sought was "crucial to his attempt to establish that he has been the subject of disparate treatment on the basis of race and ethnicity" and that "[t]o prove his allegations of disparate treatment, [he] must compare the proceedings in his case against those involving similarly situated physicians." *Id*. at 289. It further acknowledged that "[t]he interest in facilitating the eradication of discrimination by providing perhaps the only evidence that can establish its occurrence outweighs the interest in promoting candor in the medical peer review process." *Id*. (citation omitted).

In 2005, another court in this District, citing *Virmani*, also refused to adopt a federal medical peer review privilege. *Braswell*, 352 F. Supp. 2d at 651. The facts of *Braswell* are also analogous, and the reasoning of *Braswell* is instructive. They involve a doctor's peer review, alleged false reporting to the NPDB and defense-alleged peer review protections. The plaintiff was a general surgeon. *Id*. at 642 (citation omitted). Following gastric bypass procedure complications, Haywood County Hospital issued a moratorium on gastric bypass procedures by all surgeons, though lifted it three days later for others but not the plaintiff. *Id*. at 643 (citation omitted). Thereafter, an ad hoc committee was created to review the plaintiff's surgical cases, one of which was referred to the Surgical Review Committee. *Id*. (citation omitted). The Surgical Review Committee reviewed the care and, as a result of its conclusion, the plaintiff's privileges were suspended and later terminated.

*Id.* at 644 (citation omitted). Both were reported to the National Practitioner Data Bank ("NPDB") and the North Carolina Medical Board. *Id*. (citation omitted). In reviewing a motion to dismiss plaintiff's state law, federal due process and federal free speech claims – a motion that was based of the federal peer review privilege – the *Braswell* court declined to apply any such privilege. *Id*. It determined that the plaintiff's claims were "more analogous to a discrimination claim, and as so, directly concern the actions that took place during the peer review process." *Id*. at 651. Like the Fourth Circuit in *Virmani,* it found that the interest in adjudicating the plaintiff's federal claims outweighed the interest in facilitating candor in medical peer review proceedings and thus refused to adopt a federal medical peer review privilege. *Id*.

As detailed in Dr. Hetzel's Memorandum, these cases establish that no privilege applies; instead, they require production of the withheld materials. (Dkt. 55, Mem., at 14-16.)

**B.     Even Defendant Mission Hospital's Cited-Case Counsels Production.**

Despite clear and established law in the Fourth Circuit, Defendant Mission Hospital reaches to the Northern District of Indiana to rely on an unreported and plainly inapposite case, *Bonzani v. Goshen Health System Inc.*, No. 3:19-CV-586-DRL-MGG, 2022 WL 2438048 (N.D. Ind. July 5, 2022). As that case was in Indiana, of course it in no way examined the privilege Defendant now asserts – N.C. Gen. Stat. § 131E-95.

In *Bonzani*, Robert Bonzani, MD, filed a lawsuit after resigning from practice at Goshen Hospital. *Id*. at *1. After a death of one of his patients, Goshen Hospital suspended his surgical privileges and formed an Investigative Committee to initiate peer review. *Id*.

A peer review report was also requested through an outside company. *Id*. Given the choice, Dr. Bonzani resigned versus being involuntarily terminated and the resulting separation agreement included confidentiality and non-disparagement provisions. *Id*. Goshen thereafter submitted reports to the NPDB. *Id*. In response, Dr. Bonzani pursued a defamation and disparagement-related claims alleging that the report contained a false and misleading statement and that the events were not reportable. *Id*. The defendants raised an immunity defense under the Health Care Quality Improvement Act ("HCQIA"). *Id*.

In response to requests for production, interrogatories and deposition questions seeking information about the peer review process, defendants withheld information arguing lack of relevance and privilege pursuant to the Indiana Peer Review Act ("IPRA"). *Id*. at 2. The *Bonzani* court explained that "both the IPRA **and** federal common law dictate disclosure of Dr. Bonzani's peer review information in discovery as discussed below." *Id*. at *3 (citations omitted). It ultimately held that "the statutory exception to the peer review privilege for health care providers under investigation precludes disclosure of peer review records to anyone other than the health care provider at issue in a particular peer review but does not limit when a provider can access his own records" and that, "[a]ccordingly, Dr. Bonzani is entitled to the information generated as part of his Peer Review investigation." *Id*. (emphasis added).

The *Bonzani* Court then turned to a federal analysis and determined that "[a]pplication of federal privilege law would also lead to the same conclusion." *Id*. at *4. It explained that "[f]ederal courts assess whether to recognize state evidentiary privileges in federal cases on a case-by-case basis after balancing competing policies" and that "such

decisions require weighing 'the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.'" *Id*. at 4 (citations omitted). It continued, explaining, however, that "when the federal interest in a case is important and the peer review evidence is central to the claims at issue, application of a peer review privilege may not be appropriate." *Id*. (citation omitted).

The *Bonzani* Court found the claims "directly related to how his peer review was conducted, including the content of and intent behind the NPDB report Defendants submitted based on information gleaned during Peer Review," that the HCQIA invoked by the defendants did not explicitly provide for a peer review privilege and, therefore, that "the HCQIA appears consistent with the principle that discovery of even confidential information is warranted when it is relevant to a claim or defense explicitly raised in the case." *Id*. at *4. "As Dr. Bonzani's peer review proceedings are central to the claims at issue in this case and the HCQIA suggests a federal interest through the immunity defense at issue here, disclosure would also be favored under federal privilege law," the Court explained. *Id*.

Stated simply, under Fourth Circuit clear law – which is the applicable law – and also under the sole, out-of-circuit, unreported case Defendant Mission Hospital has dug up, the withheld document should be produced.

C. **The Relevance Test is Based on Pending Claims.**

Defendant Mission Hospital appears to argue that the peer review process is not relevant to the claims at bar. That argument is specious at best. As Defendant's chief case

7

citation explains, Plaintiff's "claims are directly related to how his peer review was conducted, including the content of and intent behind the NPBD report Defendants submitted based on information gleaned during Peer Review." *Bonzani*, 2022 WL 2438048, at *4. As such, relevance is clear.

## CONCLUSION

For the reasons set forth in Dr. Hetzel's original Memorandum and herein, Dr. Hetzel's Motion to Compel should be granted and the discovery schedule should be extended accordingly.

This the 3rd day of October, 2025.

Respectfully submitted,

**EDWARDS BEIGHTOL, LLC**

/s/ Catharine E. Edwards
Catharine E. Edwards
N.C. State Bar No. 52705
Kristen L. Beightol
N.C. State Bar No. 27709
P.O. Box 6759
Raleigh, NC 27628
(919) 636-5100
cee@eblaw.com
klb@eblaw.com

# CERTIFICATION PURSUANT TO STANDING ORDER – IN RE: USE OF ARTIFICIAL INTELLIGENCE

I hereby certify as follows pursuant to the Court's June 18, 2024, Standing Order In re: Use of Artificial Intelligence:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 3rd day of October, 2025.

/s/ Catharine E. Edwards
Catharine E. Edwards
N.C. State Bar No.: 52705
PO Box 6759
Raleigh, North Carolina 27628
Telephone: (919) 636-5100
Facsimile: (919) 495-6868
Email: cee@eblaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I served the foregoing **REPLY TO MISSION HOSPITAL'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL** on all counsel in this matter via ECF.

This the 3rd day of October, 2025.

/s/ Catharine E. Edwards
Catharine E. Edwards
N.C. State Bar No.: 52704
PO Box 6759
Raleigh, North Carolina 27628
Telephone: (919) 636-5100
Facsimile: (919) 495-6868
Email: cee@eblaw.com