# EXHIBIT C

Fred Hyde & Associates, Inc.
Colt's Pond, P.O. Box 362
Ashford, CT 06278
(203) 417-3159, fredhyde@aol.com

August 27, 2025


Kristen L. Beightol
Edwards Beightol
1033 Oberlin Rd., Suite 100
Raleigh, NC 27605

**Re: Hetzel v. MH Mission Hospital, LLLP**

Counsel:

Attached please find my report on this matter. This report is intended to provide information necessary in an expert opinion report under Federal Rule of Civil Procedure 26(a)(2)(B), and includes these sections: a complete statement of my opinions (report, pgs.1-9); a résumé with my qualifications to express these opinions (pg. 10); a list of materials relied upon in the development of these opinions (pgs. 11-12); a list of cases in which I have given testimony during the last five years (pgs.13-19); and a statement of my fee schedule and amount of compensation received to date for this report and opinions (pg. 20).

This report is a summary of my opinions, which are based on a reasonable degree of professional certainty, and may not include every opinion. I will make myself available for examination by deposition for a discussion of my opinions in detail. I have not decided if any of my opinions will be illustrated by exhibit at trial, but will make any such demonstratives available at least thirty days in advance.

 "MH Mission Hospital, LLLP" ("Mission Hospital" or "Mission" below) fell below hospital industry standards in reporting Dr. David Hetzel to the National Practitioner Data Bank (NPDB). That report violated: (1) the Mission Medical Staff Bylaws by treating a "precautionary suspension" as an action reportable to NPDB; (2) the investigation procedures required by Article IV of the Mission Medical Staff Bylaws; (3) the due process protections guaranteed under Article V of the Mission Medical Staff Bylaws; (4) industry standards, in bypassing appropriate alternatives to the precautionary suspension; and (5) the fundamental purpose of the NPDB, by unwarranted reporting. Mission filed its complaint against Dr. Hetzel in contravention of its rules, and for reasons entirely unrelated to patient safety or to Dr. Hetzel's clinical work. In refusing to withdraw its original complaint to the NPDB concerning Dr. Hetzel, Mission Hospital has compromised Dr. Hetzel's career from the time of that complaint to the present.

I reserve the right to add to or otherwise edit this report, should additional information be provided.

Sincerely,

Fred Hyde, MD, JD, MBA

# STATEMENT OF OPINION

My name is Fred Hyde, M.D., J.D., M.B.A., and I reside at Colt's Pond, 298 Bujak Road, Chaplin, CT 06235. I am an expert in health facility operations and finance. During the past 50 years, I have been a hospital and health facility executive, a professor of hospital management, and an independent consultant specializing in health services. My résumé is attached to this report as Exhibit 1.

## SUMMARY:

Mission Hospital violated specific provisions of their Medical Staff Bylaws and NPDB reporting requirements in reporting Dr. David Hetzel to the National Practitioner Data Bank. Mission Hospital appears to have used the credentialing and privileging process, intended to protect patient safety, for purposes unrelated to patient safety.

The evidence demonstrates a clear timeline of violations: Mission Hospital issued a precautionary suspension on March 3, 2020, conducted an investigation, and reached a final decision on June 6, 2020, concluding that "the clinical care that was the subject of the initial precautionary suspension did not warrant a limitation on Dr. Hetzel's clinical privileges." (See pgs. 7-11 of this report for a detailed timeline.)

Despite this exoneration, Mission Hospital maintained its NPDB report. These violations include: (1) treating a precautionary suspension as a reportable professional review action in direct contradiction of Section 4.6 of their Medical Staff Bylaws[1]; (2) failing to follow the mandatory investigation procedures outlined in Article IV of their Medical Staff Bylaws[2]; (3) denying Dr. Hetzel the due process protections guaranteed under Article V of their Medical Staff Bylaws[3]; (4) bypassing the Focused Professional Practice Evaluation (FPPE), the industry standard tool for addressing legitimate concerns about physician performance; and (5) maintaining an NPDB report that contradicted their own investigative conclusions and violated the fundamental purposes of the NPDB.

Most significantly, Mission Hospital's final decision contradicted the basis for their NPDB report, demonstrating that the report was filed in bad faith and contrary to the fundamental purposes of the NPDB.

## BACKGROUND:

I am an Adjunct Professor at Georgetown University, teaching required courses to graduate students in the School of Health (hospital operations, health care finance), and also teaching required courses to graduate students in the Doctor of Nursing Practice program of the School of Nursing (health care finance and economics).

I have extensive experience in hospital credentialing and privileging matters, having served as a hospital executive for over two decades and consulted on numerous cases involving medical staff governance and credentialing disputes.

My recent clients as an independent consultant include the Office of the Attorney General in the States of New York (on hospital utilization and finance), New Jersey (health insurance claims) and Washington (on hospital charity care policies and practices). I have also been a consultant for the Attorneys General of 22 "Non-consenting states" in mediation, as an expert on hospital operations and health care finance. My

---

[1] Mission Hospital Medical Staff Bylaws, Section 4.6, July 17, 2019, pg. 24.
[2] Op cit., pgs. 24-26.
[3] Op. cit., pgs. 27-35.

expertise in medical staff governance and credentialing procedures has been developed through decades of practical experience and academic study.

**ASSIGNMENT:**

I was retained to provide expert opinions in this case related to management, policies, procedures, oversight, and adherence to standards and norms in regard to the credentialing and privileging actions taken by Mission against Dr. David Hetzel. Specifically, I was asked to analyze whether Mission's actions violated their own Medical Staff Bylaws, established standards for hospital credentialing procedures, NPDB reporting requirements, and industry best practices for addressing physician performance concerns.

**METHODOLOGY:**

The methodology used to reach my opinion is based upon recognized standards in the field of hospital credentialing and privileging, medical staff governance, and health care facility management. I have conducted a detailed analysis of the Accreditation requirements of The Joint Commission (TJC) found in the 2020 edition of TJC's Hospital Accreditation Standards (HAS), Mission Hospital Medical Staff Bylaws dated July 17, 2019, Dr. Hetzel's dispute statement to the NPDB, committee meeting minutes, correspondence, and a timeline of events to compare the actual actions taken by Mission against the specific requirements and procedures outlined in their governing documents, NPDB reporting requirements, and industry standards.

My analysis included review of over 90 documents spanning from 1997 to 2021, including credentialing files, committee minutes, correspondence, NPDB reports and corrections, medical board communications, and professional services agreements. This comprehensive review allowed me to understand the full context of Mission's actions and evaluate them against established standards and their governing documents.

Mission Hospital's duty to its patients in the credentialing and privileging process is established primarily by the Medicare hospital Conditions of Participation, the Hospital Accreditation Standards (HAS) of The Joint Commission (TJC), and the policies and procedures adopted by Mission Hospital (including Medical Staff Bylaws), to demonstrate compliance with those accreditation standards.

That duty includes the proper credentialing and privileging of members of its medical staff. Information is gathered in credentialing and privileging files to demonstrate that members of the medical staff possess and apply their knowledge, and that they use the skill and care expected of physicians practicing under similar circumstances.

Information gathered in physician credentialing and privileging files is also required for business purposes of the hospital, including accreditation and licensure. Credentialing files demonstrate compliance with the federal Medicare Conditions of Participation, and also demonstrate compliance with State licensure requirements. Without accreditation, the hospital would not be paid for services provided to Medicare and Medicaid patients. Almost every commercial health insurance plan also requires that hospitals be *accredited* in order to be paid for services to patients enrolled in those plans.

The credentialing and privileging process is one of administration, involving the hospital and its elected medical staff leadership[4]. This is in contrast to the peer review process, which involves physicians (peers)

---

[4] The necessity for medical staff and administrative work together is memorialized in HAS Standard MS.01.01.03, "Neither the organized medical staff nor the governing body may unilaterally amend the medical staff bylaws or rules and regulations." Hospital Accreditation Standards, 2020, pg. MS-13.

D22-002445

only.

The HAS govern the organization and conduct of the medical staff. The Medical Staff Bylaws and the Medical Staff Rules and Regulations of Mission Hospital demonstrate the steps Mission has taken to comply with accreditation standards, as well as licensure and other legal requirements.

**FIRST OPINION: Mission violated Section 4.6 of their Medical Staff Bylaws regarding precautionary suspension and NPDB reporting requirements, bypassed available alternative remedial measures, and reached a final decision which contradicted the basis for their NPDB report.**

An "Ad Hoc" Committee on credentials developed a "report" on Dr. Hetzel prior to any discussion with him[5], recommending a "precautionary suspension" of Dr. Hetzel's clinical privileges at Mission Hospital. Section 4.6 of the Mission Hospital Medical Staff Bylaws explicitly addresses precautionary suspension of clinical privileges. The bylaws state unequivocally that such suspension "shall not imply any final finding of responsibility for the situation that caused the suspension nor shall it constitute a start of an investigation."[6] Furthermore, the bylaws specifically declare that "A precautionary suspension is not in and of itself a final professional review action that is reportable, but rather an interim step to protect patients."[7] This language is clear, unambiguous, and directly prohibits the very action that Mission Hospital took in reporting Dr. Hetzel's precautionary suspension to the NPDB[8].

The evidence from Dr. Hetzel's dispute statement to the NPDB provides a timeline that demonstrates Mission Hospital's violation of the Medical Staff Bylaws and NPDB reporting requirements. On March 3, 2020, Mission Hospital issued a precautionary suspension of Dr. Hetzel's clinical privileges. The hospital then "conducted a prolonged and thorough investigation of the situation" and reached a final decision on June 6, 2020, concluding that "the clinical care that was the subject of the initial precautionary suspension did not warrant a limitation on Dr. Hetzel's clinical privileges." This final decision represents the official conclusion after investigation.

This final decision by Mission Hospital is particularly significant because it directly contradicts the basis for the NPDB report. If Mission Hospital's investigation concluded that Dr. Hetzel's clinical care "did not warrant a limitation" on his privileges, then there was no legitimate (patient safety) basis for maintaining the report on Dr. Hetzel to the NPDB. The hospital's findings exonerated Dr. Hetzel, yet they refused to withdraw their NPDB report, demonstrating bad faith and malicious intent. The dispute statement further reveals that Mission Hospital only submitted a "Clinical Privileges Restored or Reinstated, Complete" notice to the NPDB on July 9, 2020 (NPDB Report 5500000162874767 - Code 1680).

Moreover, Mission had available to them alternative means of reviewing or limiting Dr. Hetzel's clinical work, had the hospital's interest been patient safety[9]. For example, a form of review known as Focused Professional Practice Evaluation (FPPE) has been the industry standard tool for addressing legitimate

---

[5] Letter of Dr. David Hetzel, April 17, 2020, at MH#001862, the Ad Hoc Investigative Committee discussed Dr. Hetzel's case with three of his partners.

[6] Mission Hospital Medical Staff Bylaws, Section 4.6, July 17, 2019, pg. 24.

[7] *Ibid.*

[8] HAS on credentialing and privileging: "If there is uncertainty regarding the practitioner's professional performance, the organized medical staff should follow the course of action defined in the medical staff bylaws for further evaluation of the practitioner." HAS 2020, pg. MS-40. Then, "Privileged practitioners have access to the medical staff fair hearing and appeal process should the intervention result in corrective action."

[9] The responsibility for practitioner evaluation is noted in the Elements of Performance for MS.02.01.01, "The medical staff executive committee requests evaluation of practitioners privileged through the medical staff process in instances where there is doubt about an applicant's ability to perform the privileges requested." HAS, 2020, pg. MS-15.

concerns about physician performance since 2007[10]. The FPPE, as outlined in The Joint Commission's Hospital Accreditation Standards MS.08.01.01, provides a structured, objective method for evaluating physician performance without resorting to suspension or other adverse actions that would require NPDB reporting. The evidence demonstrates that FPPE was available as an appropriate alternative to address any legitimate concerns about Dr. Hetzel's clinical performance, yet Mission chose not to implement this standard industry practice *until after* Dr. Hetzel's precautionary suspension was lifted.[11]

According to the Mission Hospital Credentials Committee Minutes of May 11, 2020, "Focused Practice Performance Evaluation" for Dr. Hetzel was first discussed at that meeting. Subsequently, the Medical Executive Committee Meeting Minutes of June 5, 2020 document the decision that for Dr. Hetzel "All surgical cases will be the subject of a Focused Professional Practice Evaluation." This timeline is significant because it demonstrates that Mission was aware of FPPE as an appropriate tool for performance evaluation, yet chose not to implement it when concerns were alleged about Dr. Hetzel's performance. [12] Instead, the hospital proceeded directly to "precautionary suspension" and subsequent NPDB reporting, bypassing the very tool designed to address performance concerns without punitive consequences.

In summary, the availability of FPPE to hospitals since 2007 as an alternative measure is particularly important because it would have allowed Mission to address any legitimate patient safety concerns without triggering NPDB reporting requirements. FPPE is specifically designed as a non-punitive, educational tool that focuses on performance improvement, rather than disciplinary action. In bypassing this available alternative and proceeding directly to precautionary suspension, Mission demonstrated a disregard for established best practices, their own governance procedures, and industry standards for addressing physician performance concerns.

**SECOND OPINION: Mission failed to follow the mandatory investigation procedures required by Article IV of their Medical Staff Bylaws and violated established due process requirements.**

Article IV of the Mission Hospital Medical Staff Bylaws establishes specific procedures that must be followed before any investigation can commence. Section 4.3 of the Bylaws requires that "An investigation will begin only after a formal resolution of the Credentials Committee to that effect following receipt of a written request for an investigation." The bylaws further specify that investigations can only be initiated through formal written requests from designated parties or by formal resolution of the Credentials Committee, not "hallway," "phone conversation" or other informal reports. These procedures are not optional; they are mandatory requirements that must be followed to ensure due process and proper governance.

The bylaws mandate that the Credentials Committee "will meet as soon as possible after receiving the request for, or delegation of, an investigation" and that "If the request for an investigation contains sufficient information to warrant an investigation, the Credentials Committee will immediately investigate the matter, appoint an investigating subcommittee to do so, or appoint an ad hoc investigating committee." These

---

[10] HAS Standard MS.08.01.01: "Focused professional practice evaluation is a process whereby the organization evaluates the privilege-specific competence of the practitioner…when a question arises regarding a currently privileged practitioner's ability to provide safe, high quality patient care." HAS 2020 pg. MS-37.
[11] HAS Standard MS.08.01.01: Focused professional practice evaluation is a time-limited period during which the organization evaluates and determines the practitioner's professional performance.' HAS 2020 pg. 37.
[12] HAS Standard MS.08.01.01: "Focused professional practice evaluation is consistently implemented in accordance with the criteria and requirements defined by the organized medical staff." HAS 2020, pg. MS-38.

provisions establish a clear procedural framework that must be followed to ensure fairness and proper governance.

The dispute statement references Section 8.5(a) of the Medical Staff Bylaws, which states that "an investigation will end upon final action by the Board." This provision, combined with the evidence that Mission Hospital's final decision concluded that no limitation on Dr. Hetzel's privileges was warranted, demonstrates that the investigation process was completed and resulted in Dr. Hetzel's exoneration. Yet Mission Hospital maintained their NPDB report despite their own investigative findings, acting in direct contradiction of their conclusions.

No evidence has been produced demonstrating that Mission followed these procedures before taking action against Dr. Hetzel[13]. The absence of formal resolutions, written requests for investigation, or proper committee deliberations, indicates that Mission bypassed established governance procedures and acted outside the scope of their Medical Staff Bylaws, a violation of due process and proper medical staff governance[14].

**THIRD OPINION: Mission denied Dr. Hetzel the due process protections guaranteed under Article V of their Medical Staff Bylaws and violated the fundamental purposes of the NPDB.**

Article V of the Mission Hospital Medical Staff Bylaws establishes comprehensive hearing and appeal procedures designed to protect the due process rights of medical staff members. Section 5.1 specifies the grounds for hearing and the circumstances under which medical staff members are entitled to due process protections.

The bylaws require that when adverse actions are taken, "the individual shall promptly be given notice by the President of the Hospital, in writing, by certified mail return receipt requested or by hand-delivery, that includes: (i) a statement of the recommendation or action and the general reasons for it; (ii) notice that the individual has the right to request a hearing within thirty (30) days of receipt of this notice; and (iii) a copy of this Article outlining the right to a hearing." By taking administrative actions outside the medical staff governance structure and maintaining an NPDB report that contradicted their investigative findings, Mission denied Dr. Hetzel these fundamental due process protections.

Mission Hospital's actions were "contrary to the purposes of the NPDB." The Department of Health and Human Services has stated that the NPDB's purpose is "to prevent incompetent or unprofessional practitioners from moving from one jurisdiction to another without disclosure or discovery of previously damaging or incompetent performance."[15] However, Mission Hospital's investigation concluded that Dr. Hetzel was neither incompetent nor unprofessional, making their NPDB report contrary to the fundamental purposes of the database.

---

[13] Letter of Dr. David Hetzel, April 2020, MH#001860, in which Dr. Hetzel indicates that the "Ad Hoc Investigative Committee" concluded its report prior to any discussion with him.

[14] HAS MS.10.01.01 on fair hearings and appeals, notes that "The purpose of a fair hearing and appeal is to assure full consideration and reconsideration of quality and safety issues and, under the current structure of reporting to the National Practitioner Data Bank (NPDB), allow practitioners to defend themselves." HAS 2020 at pg. MS-41.

[15] "Health Care Quality Improvement Act of 1986, as amended. Title IV of Public Law 99-660; legislation intended to improve the quality of medical care by encouraging hospitals, State Licensing Boards, and other health care organizations, including professional societies, to identify and discipline those who engage in unprofessional behavior; and to restrict the ability of incompetent practitioners to move from state to state without disclosure or discovery of the practitioners' previous damaging or incompetent performance." NPDB Glossary.

D2002448

Furthermore, the dispute statement notes that "Dr. Hetzel has moved to a new jurisdiction, has disclosed the investigation, and has been granted a new license to practice medicine in Texas." This demonstrates that Dr. Hetzel acted with complete transparency and that the NPDB report serves no legitimate purpose in protecting patient safety, as he has already disclosed the matter and been cleared by licensing authorities in his new jurisdiction. The maintenance of the NPDB report under these circumstances serves only to damage Dr. Hetzel's reputation and career prospects, not a desire to protect patients.

A "neuropsychological" examination of Dr. Hetzel, required as a condition of the restoration of his privileges, is inappropriate and below standards, and may possibly speak to hospital motivations.[16] Alleged concerns about Dr. Hetzel's health are comingled with this disciplinary process, violating HAS MS.11.01.01; demonstrating a motivation other than protection of patient safety; and violating Dr. Hetzel's right to privacy in health related matters.

The damage to Dr. Hetzel's professional reputation, income and life are ongoing. Any prospective employer or hospital considering credentials for Dr. Hetzel will encounter this misleading allegation. The NPDB still shows the Mission report, "corrected." Any such report regarding a health care professionals raises questions and doubts. As a consequence of this erroneous report, Dr. Hetzel has been unable to secure employment. The resulting gap in Dr. Hetzel's employment record has made maintenance of board certification difficult or impossible. There is, and will continue to be, ongoing "fallout" from the Mission report, including doubts about the alleged clinical concerns cited in the initial report, even though Dr. Hetzel was exonerated on all clinical matters.

**SUMMARY:**

Based on the evidence available to date, and within a reasonable degree of professional certainty, Mission systematically violated multiple provisions of their Medical Staff Bylaws, NPDB reporting requirements, and industry standards in their treatment of Dr. Hetzel.

Mission Hospital's investigation concluded that "the clinical care that was the subject of the initial precautionary suspension did not warrant a limitation on Dr. Hetzel's clinical privileges," yet they maintained their NPDB report in direct contradiction of those findings.

These violations include: (1) treating a precautionary suspension as a reportable action in direct violation of Section 4.6 of the Mission Hospital Medical Staff Bylaws; (2) failing to follow mandatory investigation procedures required by Article IV; (3) denying due process protections guaranteed under Article V; (4) bypassing the Focused Professional Practice Evaluation (FPPE) as an appropriate alternative; and (5) maintaining an NPDB report that contradicted their investigative conclusions and violated the fundamental purposes of the NPDB.

These multiple failings, over a prolonged period, demonstrate that Mission acted in bad faith, outside the scope of their established governance procedures. My opinion is that these actions, more likely than not, were motivated by financial[17] or other considerations *unrelated to legitimate patient safety concerns.*

---

[16] HAS MS.11.01.01 requires that: "The medical staff implements a process to identify and manage matters of individual health for licensed independent practitioners which is separate from actions taken for disciplinary purposes." HAS 2020 at pg. MS-42.

[17] Dr. Hetzel notes the possibility of "targeting" of his practice for economic reasons in his letter of April 17, 2020 (at MH#001865). He noted specifically that he had practiced at Mission for 23 years, 21 of them without difficulty, but that, at the end of 2018, following acquisition of the hospital by HCA, and acquisition of practices in his specialty, he became the target of anonymous complaints to the medical staff office. (MH#001865.)

**Timetable, Dr. David Hetzel v. Mission Hospital**

**March 2, 2020:**

Dr. Hetzel performed a surgery to reduce the bulk of a gynecologic tumor which had invaded a patient's abdomen. Dr. Hetzel made an intraoperative decision to involve a hepatobiliary surgeon and surgical oncologist.

**March 3, 2020:**

March 3, the Chief of Staff and CEO placed Dr. Hetzel's clinical privileges on "precautionary suspension," based on the above-referenced case and two other reports of intraoperative organ injuries over the prior six months. (Information on these cases came not from patients or other complaints, but from discussion with Dr. Hetzel's partners by the "Ad Hoc Investigative Committee," see MH#001863).

Cited as "Date of Action" in May 4, 2020 NPDB report.

Described by Brenda Shelton, Mission Hospital's Director, Medical Staff and Credentialing, as "a precautionary suspension."

**March 10, 2020:**

The Credentials Committee was scheduled to review and consider the precautionary suspension, and to meet with Dr. Hetzel to hear his version of events, although Dr. Hetzel was not contacted and the Credentials Committee reportedly had no members that performed gynecologic oncology, Dr. Hetzel's specialty.

The Credentials Committee modified the precautionary suspension to a "lesser sanction with conditions." Per Brenda Shelton letter to DHHS, the precautionary suspension was modified, allowing Dr. Hetzel to continue seeing patients. "But for all operative cases, he was required to have a concurrent consultation…by a qualified surgeon…He was also required to have another qualified surgeon scrub in with him for his operative cases…"

**March 25, 2020:**

Per Brenda Shelton letter to DHHS, "all clinical privileges were suspended." On March 25, 2020, Dr. Hetzel received a letter from the CEO and Credentials Committee Chair, stating that the Committee had again imposed a precautionary suspension of Dr. Hetzel's privileges pending the full investigation. The investigation would again follow the suspension.

**April 3-22, 2020:**

On April 3, 2020, Dr. Hetzel provided a response letter to the Committee and on April 10, 2020, Dr. Hetzel met with the Investigating Committee. On April 17, 2020, and April 22, 2020, Dr. Hetzel provided the Investigating Committee with additional written responses. Following this investigation, the hospital concluded that the clinical care that was the subject of the initial precautionary suspension *did not warrant a limitation on Dr. Hetzel's clinical privileges*.

**April 23, 2020**

The Committee modified Dr. Hetzel's precautionary suspension and fully restored his privileges, subject to Dr. Hetzel's satisfactory completion of a fitness-for-duty evaluation. Per Shelton letter to DHHS, "it was determined that Dr. Hetzel's precautionary suspension may be lifted contingent on the findings of a fitness for duty evaluation which will include a Neuropsychologist's and Neurologist's assessment."

D22002450

**May 4, 2020:**

On May 4, 2020, the hospital reported Dr. Hetzel's investigation to the National Practitioner's Databank for removal of privileges due to a professional review action under 45 C.F.R. § 60.12, and/or for negative actions or findings taken by peer review organizations under 45 C.F.R. § 60.12. Report to the NPDB by Mission Hospital cited "Date of Action: 03/03/2020."

"Dr. Hetzel was the subject of a precautionary suspension beginning on 3/3/20. This precautionary suspension was modified with the most recent modification being on 4/23/20 when the precautionary suspension was removed subject to the practitioner's satisfactory completion of fitness for duty evaluations."

From the NPDB Guidebook (2018): If the summary suspension subsequently is modified or revised as part of a final decision by the governing board or similar body, the health care entity must then submit a Revision-to-Action Report to supplement the Initial Report submitted to the NPDB.

**June 5, 2020:**

Cited in July 9th NPDB report by Mission as date "Clinical privileges restored or reinstated, complete."

**July 9, 2020:**

Report to NPDB by Mission Hospital citing "Date of Action: 06/09/2020."

Subsequent Action:

Clinical privileges restored or reinstated, complete. Date Action Was Taken: 06/05/2020.

Date Action Became Effective: 06/09/2020:

"Dr. Hetzel was the subject of a precautionary suspension. The Medical Staff, through the Medical Executive Committee, made the decision that the clinical care that was the subject of the investigation did not warrant a limitation of Dr. Hetzel's clinical privileges and his clinical privileges were fully restored on or about June 9, 2020 along with conditions that did not limit or restrict Dr. Hetzel's clinical privileges."

**February 2, 2021:**

Subject Statement:

Dr. Hetzel filed a dispute of the NPDB information, noting that Mission issued a precautionary suspension of privileges on 3/3/20, conducted a prolonged and thorough investigation of the situation, and then reached a final decision on the matter on June 6, 2020 concluding that the clinical care that was the subject of the initial precautionary suspension did not warrant a limitation on Dr. Hetzel's clinical privileges. Mission's filing a report with the NPDB was not in accordance with NPDB reporting requirements. "Therefore, there is no finding that Dr. Hetzel is either incompetent or unprofessional."

"Dr. Hetzel has moved to a new jurisdiction, has disclosed the investigation, and has been granted a new license to practice medicine in Texas."

**May 11, 2021**

Letter from Mission Counsel (Phillip Jackson) to Dr. Hetzel Counsel (Steve Peterson) indicating that Mission Hospital "has decided to neither correct nor void the Initial Adverse Action Report filed on May 4, 2020…because the report was submitted in accordance with NPDB reporting requirements."

**July 27, 2021**

Letter from Donald Illich of DHHS to Brenda Shelton of Mission requesting correction to May 4, 2020 report:

"We believe a correction should be made to the Description of Subject's Act(s) or Omission(s) field. The Hospital should use a Date of Action of March 25, 2020 instead of March 3, 2020. It's clear that from March 25, 2020, Dr. Hetzel was suspended without interruption through June 5, 2020. The Report narrative should include that 1. March 3, 2020 – a precautionary suspension was taken against Dr. Hetzel; 2. March 10, 2020 – a precautionary suspension was modified, allowing Dr. Hetzel to continue seeing patients. But for all operative cases, he was required to have a concurrent consultation…by a qualified surgeon employed by Hope Women's Cancer Center…He was also required to have another qualified surgeon scrub in with him for his operative cases…he could also no longer supervise resident; 3. March 25, 2020 – all clinical privileges were suspended."

**August 27, 2021**

Letter from Brenda Shelton of Mission Hospital to Donald Illich of DHHS asking for clarification regarding the requested Correction Report, specifically whether or not the Correction Report would be "limited to what we knew when we filed the report on May 4, 2020? More specifically, do we need to include a description of events that occurred between May 4, 2020…and July 9, 2020, the date we submitted our Revision to Action report? We believe that we do not need to do so given that the [NPDB] Guidebook advises that '[a] Correction Report negates and replaces the current version of a report, which suggests the Correction Report should be limited to what we knew when the Initial Report was filed."

**September 8, 2021**

Response from Donald Illich to Brenda Shelton re Aug. 27th letter, indicating that "you do not need to add a description of events that occurred between May 4, 2020 and July 9, 2020, to this Report; they are not part of the timeline that the Correction Report covers."

**October 27, 2021**

Corrected NPDB Report submitted by Brenda Shelton. Cites date action was taken as 3/25/20 (the date "all clinical privileges were suspended.")

**December 22, 2021**

Letter to Dr. Hetzel from Carolyn Nganga-Good of DHHS regarding request for review of the Corrected Adverse Action Report submitted to the NPDB on Oct. 27, 2021. The initial Adverse Action Report submitted to the NPDB on May 4, 2020 by the Hospital was replaced by the Corrected Report. She writes, "the Dispute Resolution Decision is as follows: There is no basis on which to conclude that the Report should not have been filed in the NPDB or that it is not accurate, compete, timely or relevant. Your request that the Report be voided from the NPDB is hereby denied. The Report will remain in the NPDB."

**December 23, 2021:**

In response to a request for review by DHHS, the Corrected NPDB Report reads, "The practitioner requested Dispute Resolution of this report. The Secretary can only review (1) whether the action is reportable under applicable statutes and regulations and (2) whether the report accurately describes the reporter's action and reasons for action as stated in the reporter's decision documents. The Secretary cannot conduct an independent review of the merits of the action taken by the reporting entity, review the 'due process' provided by the entity, or substitute his judgment."

**Exhibit 1**

**Resume for Fred Hyde, MD, JD, MBA**

Fred Hyde & Associates, Inc.                                                  (203) 417-3159
Colt's Pond, P.O. Box 362                                                    fredhyde@aol.com
Ashford, CT 06278

Dr. Hyde is an independent consultant specializing in health care services and finances. Current and past clients have included academic medical centers, physicians, community hospitals, surgery centers, managed care organizations, health care unions, community organizations and foundations. He has undertaken work involving management, finance, personnel and planning in more than three dozen hospitals. Dr. Hyde works with his wife, Jane Guillette, formerly Vice President at White Plains Hospital Center, New York, as Fred Hyde & Associates, Inc.

**2023-2025          Recent Consulting Assignments**

The Attorney General of the State of New York as an expert in hospital utilization and finance, concerning the closure of a hospital labor and delivery service, and hospital to health system financial transactions.

The Attorneys General of New York and 22 other "Non-consenting states" in mediation, *In Re Purdue Pharma, L.P., et. al.*, as well as the same group of Attorneys General in the Governmental Plaintiff Ad Hoc Committee, *In Re Mallinckrodt, PLC, et. al.*, in both cases as an expert on hospital operations and health care finance.

The Office of the Attorney General of the State of Washington, as a consultant on hospital charity care policies, national standards for revenue cycle management, and the application of those policies for the benefit of patients.

A union representing nurses in eight western New York State hospitals, as their consultant on work practices, compensation, benefits, and financial strategies of their employer hospitals.

The American Federation of Teachers, a union with 200,000 nurses, hospitalists and other health professionals among its members, as the union's national consulting advisor on hospital management and health care finance issues.

**Academic Background and Teaching Activity**

| | |
|---|---|
| **2018-present** | Georgetown University, Adjunct Associate Professor in the Schools of Nursing and Health, currently teaching required graduate level classes, Spring 2025 semester. |
| **2003-2018** | Columbia University, Clinical Professor of Health Policy & Management, the Mailman School of Public Health, and (2016-2017) Columbia Business School. |
| **1992** | MBA, Columbia University, School of Business. |
| **1975** | JD, Yale School of Law.  Admitted to the Bar, State of Connecticut, 1975. |
| **1972** | MD, Yale School of Medicine. |
| **1967** | BA, Yale College, *magna cum laude*, honors in major (biology), Phi Beta Kappa. |

**Executive and Management Experience**

| | |
|---|---|
| **2006-2010** | Chief Executive Officer, Delaware Outpatient Center for Surgery, Newark, DE. |
| **2008** | Chief Executive Officer, Reproductive Associates of Delaware, Newark, DE. |
| **2001-2002** | President/Chief Executive Officer, Aliquippa Community Hospital, Aliquippa, PA. |
| **1997-2001** | Chief Executive Officer, Winsted Health Center Foundation, Winsted, CT. |
| **1987-1994** | President/Chief Executive Officer, Windham Hospital, Willimantic, CT. |
| **1987-1994** | President, Northeast Hospital Network (1987-93) and Health Alliance of Connecticut (1993-4). |
| **1979-1981** | Vice President and National Health Care Manager, Smith Barney; also with Lehman Brothers |
| **1977-1981** | Yale New Haven Medical Center.  Vice President for Planning, Yale-New Haven Hospital, (1977- 79); Director of the Faculty Practice Plan, Yale Medical School (1979-1981). |
| **1973-1977** | Vice President (1973-75), General Counsel (1975-77) of the Connecticut Hospital Association. |

**EXHIBIT 2: MATERIALS REVIEWED**

**Accreditation Materials**

Hospital Accreditation Standards (HAS) of The Joint Commission (TJC), 2020, Medical Staff MS.01.01.03, MS.05.01.01, MS.06.01.01, MS.08.01.03, MS.09.01.01, MS.10.01.01, MS.11.01.01.

**NPDB Reports and Related Communications**

• 2020.05.04 NPDB Report
• 2020.07.09 NPDB Report
• 2020.05.04 NPDB Report including PL statement
• 2021.05.11 Letter from Phillip Jackson (Mission Counsel) to Steve Peterson (Hetzel Counsel) Re Mission Hospital has decided to neither correct nor void the 2020.05.04 NPDB Report
• 2021.07.27 Letter from Donald Illich (DHHS) to Brenda Shelton (Mission) requesting correction to 2020.05.04 Report
• 2021.08.27 Letter from Brenda Shelton (Mission) to Donald Illich (DHHS) including proposed revision
• 2021.09.08 Letter from Donald Illich (DHHS) to Brenda Shelton (Mission) answering inquiry regarding description required in correction
• 2021.10.27 CORRECTED NPDB Report
• 2021.12.22 Letter from Carolyn Nganga-Good (DHHS) to Dr. Hetzel regarding request for review of the 2020.05.04 Report
• Statement to NPDB from Hetzel
• Index to Mission Hospital Submission to NPDB
• NPDB Code Lists
• Correspondence concerning Revision-to-Action Report

**Professional Services Agreements**

• 2012.12.01 Professional Services Agreement between Mission Hospital, Inc. and Hope – A Woman's Cancer Center, P.A. (signed by Dr. Hetzel for Hope)
• 2020.05.01 Agreement Regarding Professional Services Agreement with respect to Professional Services Agreement
• 2021.04.15 Mutual Termination of Professional Services Agreement
• Mission Hospital / David Hetzel, MD Agreements (various versions), unsigned, June 2020

**Mission Hospital Policies and Procedures**

• Table of Contents, Mission Hospital Medical Staff Policies
• Mission Hospital Medical Staff Bylaws (July 17, 2019)
• Mission Hospital Physician/AHP Code of Conduct Policy
• Credentialing Guidelines, Robotic-Assisted Surgery
• Report of Quality/Outcomes review of Major Breast Surgery Cases, with accompanying Credentialing Guidelines
• Mission Hospital Conflict of Interest Disclosure Form

**Credentialing and Privileging Documents**

• Historical credentialing/re-credentialing documents, including progressive expansion of privileges for Dr. Hetzl, 1997 – 2020
• Performance Improvement Information and FPPE/OPPE Consents/Releases

• Texas Tech Credentialing Office documents

**Committee Minutes and Reports**

• Redacted Credentials Committee Minutes, March 10, 2020
• Redacted Credentials Committee Minutes, March 24, 2020
• Redacted Credentials Committee Minutes of March 24th approving reinstatement of full precautionary suspension of privileges
• Redacted Credentials Committee Minutes, April 23, 2020
• Redacted Credentials Committee Minutes, May 11, 2020
• Redacted MEC Minutes of 5-1-2020
• Redacted MEC Minutes of 6-5-2020
• Ad hoc credentials committee report

**Correspondence and Communications**

• Memo on March 3, 2020 Conference Call re Precautionary Suspension of Privileges
• Letter to Dr. Hetzel, March 3, 2020, re precautionary suspension, with accompanying criteria
• Letter to Dr. Hetzel of March 25, 2020 re March 24th suspension
• Mission Hospital CEO Chad Patrick March 12, 2020 letter to Dr. Hetzel re further investigations
• Hetzel request for hearing in letter of April 3, 2020
• Hetzel Response to Ad Hoc Credentials Committee Report, April 17, 2020
• Hetzel Letter of May 6, 2020 to Peer Review Committee
• June 9 and 17, 2020 letters to Hetzel from Mission Hospital re MEC and Credentials Committee action
• June 17, 2020 Letter of Guidance from Mission Hospital
• Various communications to Dr. Hetzel from the Credentials Committee and the Medical Executive Committee
• Correspondence (multiple letters and emails) between Counsel and Mission Hospital representatives
• Correspondence from Mission Hospital Medical Staff Coordinator
• Mission Hospital letter to Texas Tech

**Medical Board Communications**

• AZ Medical Board Communications
• NC Medical Board Communications and Determination
• Texas Medical Board Communications and Screen Shot
• Memos to Texas Medical Board from Mission Hospital Credentials Committee

**Clinical and Evaluation Materials**

• Three patient case summaries submitted by Dr. Hetzel
• April 29, 2020 Neuropsychological Evaluation Report
• Plaintiff's Neurology and Neuropsychological Evaluations
• Peer Review Questions for Dr. Hetzel
• Clinical Concern Response Sheets

**Employment and Communications**

• Plaintiff's Communications with Potential Employers

# Exhibit 3

| Plaintiff | Defendant | Retaining Counsel | Address, Retaining Counsel | Case Number, Major Issue(s) | Incident Date | D = Deposition, R=Report, T =Trial |
|---|---|---|---|---|---|---|
| *Arenivar, Gabriel* | St. Anthony Hospital | Andy Campbell, Maples, Nix & Diesselhorst | 15401 N. May Avenue, Edmond, OK 73013 | CJ-2015-4478 | Aug. 1-3, 2012 | R, 2-9-21; D, 5-26-22; Settled 2-2023 |
| *Attorney General, State of New York* | Burdett Center, Trinity Health, Samaritan Hospital | James G. Sheehan Chief, Charities Bureau, New York State Department of Law (Attorney General) | 28 Liberty Street, 19th Floor New York, NY 10005 | Contract Number T106670, Samaritan Hospital Burdett Birthing Center; closure, funds transfer | 2011-2022 | R, multiple, 2022-2023 |
| *Attorneys General (New York and Nonconsenting States)* | Mediation, In re Purdue Pharma, L.P., et. al. 19-23649, U.S. Bankruptcy Court for the Southern District of New York (White Plains) | David E. Nachman, Assistant Attorney General, NY, Counsel for Opioids and Impact Litigation | Office of the New York Attorney General 28 Liberty | New York, NY 10005 212-416-8390 | United States Bankruptcy Court for the Southern District of New York, Chapter 11 Case No. 19-23649 (RDD). Damages from Opioid Use Disorder, Hospitals, Third Party Payers | OUD continuing, bankruptcy, Mediation 7-30-2020 ff. | R, multiple 6, 7-2020 |
| *Attorneys General, Governmental Plaintiff Ad Hoc Committee* | In re Mallinckrodt PLC, et. al. | Scott Gilbert, Gilbert Legal | 700 Pennsylvania Ave., SE, Washington, DC 20003 | Case No. 20-12522 (JTD), Re: Docket Nos. 1250, 1703. Independent, non-testifying expert on hospitals, physicians, third party payors, | 3/10/2021 | R, multiple, 2021, 2022 |
| Aviles-Rodriguez, Jose | *Attorney General, State of New Jersey* | James M. Greenberg, Deputy Attorney General | Division of Law, Tort Litigation & Judiciary, 124 Halsey Street, 5th Floor, Newark, NJ 07101 | Insurance bill and payment | 4/19/2021 | R, 4-25 |
| *Attorney General, State of Washington* | Providence Health & Services, Swedish Health Services, and Kadlec Regional Medical Center | Audrey Udashen, Will O'Connor, Matt Geyman, Associate and Assistant Attorneys General | 800 5th Avenue Suite 2000, Seattle WA 98104 | King County Superior Court Cause No. 22-2-01754-6 SEA Matter No. 10872804 | May 23, 2022-May 31, 2023 | D, 9-27-23 |
| *Bern, Lauren* | HCA-HealthOne LLC, d/b/a Swedish Medical Center | Jim Leventhal | Leventhal Puga Braley, PC, 950 South Cherry Street, Suite 600, Denver, CO 80246 | Case 1:23-cv-00304. Interventional radiology, DAPT, informed consent. | | D, 7-1-25 |
| *Blanton, Jessica (for Sharon Bosley, deceased)* | Piedmont Healthcare, et al | Curtis Dickinson | Dickinson Law Firm, 1198 Buckhead Crossing, Suite F, Woodstock, GA 30189 | 23-A-3209, adequacy of physician staffing, nursing education and training, communication | Dec. 21-29, 2021 | D, 11-5-24 |

Names in bold italics indicate party retaining Fred Hyde as expert.

1

DJH002456

**Fred Hyde, Activity as Expert Witness, 2021-2025, Deposition and Trial**

| Plaintiff | Defendant | Retaining Counsel | Address, Retaining Counsel | Case Number, Major Issue(s) | Incident Date | D = Deposition, R=Report, T =Trial |
|---|---|---|---|---|---|---|
| *Bruce, Yadanishan* | The Southeast Permanente Medical Group, Inc., Jason Dowling, MD, Sana Rabbi, MD, Pamella Charles-Pryce, MD, Lisa M. Rose-Cantrell, NP | Curtis Dickinson | Dickinson Law Firm, 1198 Buckhead Crossing, Suite F, Woodstock, GA 30189 | Civil Action File No. 22-C-04263-S3, Gwinnett County, Ga. Delay in care, communication and coordination, radiologist report. | 11/16/20-12/3/20 | D, 4-17-24 |
| *Buchbaum, Ronald* | Brandon Regional Hospital, et al | Mike Trentalange, Trentalange & Kelley, PA | 218 N. Dale Mabry Highway, Tampa, FL 33609 | No. 20-CA-2707; intraoperative monitoring of neurosurgical procedure; credentialing of neurosurgeon; hospital role in informed consent. | 1/7/2019 | D, 11-29-21 |
| *Cabrera, Caridad and Joaquin, for their daughter* | Miami Children's Hospital d/b/a Nicklaus Children's Hospital | Mary Margaret Schneider, DLD Lawyers (DeMahy Labrador Drake & Cabeza) | 806 Douglas Road, 12th Floor, Coral Gables, FL 33134 | 2021 027799 CA 05; infection control, post-operative care, call coverage | January 21-28, 2020 | D, 10-16-23 |
| *Cherelus, Genicia* | Westside Regional Medical Center, et al | Mary Margaret Schneider, DLD Lawyers (DeMahy Labrador Drake & Cabeza) | 806 Douglas Road, 12th Floor, Coral Gables, FL 33134 | Broward County Circuit Court Case Number: CACE:-19-002780 | 1/5/2018 | D, 9-2-21 |
| *Collins, Cassandra (for son, Donovan)* | Piedmont Athens Regional Medical Center, Children's Healthcare of Atlanta, et al | Adam Princenthal | Princenthal, May & Wilson, LLC, 750 Hammond Dr., Bldg 12, Sandy Springs, GA 30328 | Civil Action File No.: 22-A-3070, Cobb County State Court; stroke, transfer | 10/11/21 | D, 12-11-04 |
| *Coriano-Jimenez, Haydelis and Eduardo Gutierrez-Ajucum* | Marion Community Hospital, Inc., d/b/a West Marion Community Hospital, and Angel Caban, MD | Robin Treto | Paul Knopf Bigger, 840 South Denning Drive, Suite 200, Winter Park, FL 32789 | Case No.: 2019-CA-001598; Minimally invasive surgery, surgeon as agent of hospital (hospital control of surgeon activity); informed consent; financial considerations. | 10/19/18 | D, 3-31-21 |
| *Daniels, Maita* | AHS (Ardent) Management, Lovelace Health System | Katie Curry, Kathy Love | McGinn, Montoya, Love, Curry | D-202-CV-2021-03234; Negligent credentialing, patient rights, informed consent, distant management and control | 5/18/2020 | 0-14-22; 5-12-23 |
| *Davis, Angela (for Benjamin)* | Tift Regional Health System, et al | Kathy McArthur, Jordan Josey | McArthur Law Firm, 6055 Lakeside Commons Drive, Suite 400 Macon, GA 31210 | 2022EV007031, delay in diagnosis, EMTALA: failure to provide necessary services or transfer patient | 12/27/2020ff | D, 8-12-25 |

Names in bold italics indicate party retaining Fred Hyde as expert.

2

Fred Hyde, Activity as Expert Witness, 2021-2025, Deposition and Trial

| Plaintiff | Defendant | Retaining Counsel | Address, Retaining Counsel | Case Number, Major Issue(s) | Incident Date | D = Deposition, R=Report, T =Trial |
|---|---|---|---|---|---|---|
| *Doe, Jane* | Children's Hospital of Alabama | Gregory Zarzaur | 2332 2nd Avenue North, Birmingham, AL 35203 | 01-CV-2017-901776.00, sexual assault | 2011 | D, 7-15-24 |
| *Doe, Jane* | Prime Healthcare Services - Lehigh Acres, LLC, d/b/a Lehigh Regional Medical Center | Ryan Fogg, Esq. | Halberg and Fogg, PLLC Barristers Bldg. 1615 Forum Place, Suite 3-B West Palm Beach, FL 33401 | 20-CA-003259, sexual assault of patient; negligent hiring, supervision; provision of a safe environment for care, including security; management of contracted services. | 11/15/2019 | D 2-7-22 |
| *Dorsey, Tervon* | New Mexico Bone and Joint Institute, P.C., American Foundation or Lower Extremity Surgery and Research, et al. | Allegra Carpenter, Mollie McGraw | Allegra Carpenter Law, 500 Tijeras NW, Albuquerque, NM 87102 | No. D-101-CV-2023-01753, DPM surgical practices, Fellowship program, informed consent., | Oct 2019-August 2020 | D, 7-7-25, 7-16-25 |
| *Ferris, Michelle* | Gerald Champion Regional Medical Center, et al | Allegra Carpenter, Mollie McGraw | Allegra Carpenter Law, 500 Tijeras NW, Albuquerque, NM 87102 | No. D-307-CV-2022-00012; Delay in care; lack of coordination; abandonment. | Jan. 15 - Feb. 15, 2019 | D, 4-10-24 and 9-4-24 |
| *Foster, Cornelius* | Lovelace Health System, Southwest Medical Associates, and Mark Erasmus, MD | Adrian Vega | Buckingham & Vega, 2125 Wyoming Blvd NE, Suite 100, Albuquerque, NM 87112 | D-202-CV-2022-01550; negligent credentialing, privileging, and supervision | | D, 1-31-25 |
| *Garcia, Ivan* | Adventist Health System d/b/a/Florida Hospital Altamonte Springs | Steven Maher/Ryan Fogg, Halberg Law | The Maher Law Firm, P.O. Box 2209, Winter Park, FL 32790 | 2019-CA-003353-09M-L Failure to transfer in timely manner. NICU absent, transportation delayed. | 5/5-29/2015 | D, 11-11-22 |
| *Giacomi, Anna* | Union General Hospital, et al | Moses Kim, Esq. | The Moses Firm, LLC 3340 Peachtree Road, Suite 2570, Atlanta, GA | Civil Action No. 17-CV-365, Hospital responsibility for oversight of negligent emergency dept. director. Physician addiction. | Dec. 4-11, 2015 | D, 1-30-2024; T, 7-12-24 |
| *Goldman, Karen (for Elliot, deceased)* | AdventHealth Orlando et al | Geoffrey Moore, Esq. | The Maher Law Firm, P.O. Box 2209, Winter Park, FL 32790 | Agency, hospital right to control actions of physician, surgery chairman, robotically assisted surgery, etc. | 9/1-10/25/2018 | D, 3-10-23 |
| *Hamilton, Althia (for Estate of Yvonne Smiley)* | Piedmont Rockdale Hospital, et al | Kevin Race and Daniel Moriarty | Race Law, 5555 Glenridge Connector, Suite 550, Atlanta, GA 30343 and Moriarty Injury Lawyer, LLC, 865 Greenwood Ave NE, Atlanta, GA 30306 | Civil Action No: 21-C-06344-S4; impaired physician; negligent credentialing and re-credentialing; contract management; private equity-backed staffing firm | 8/26/2019 | D, 6-27, 24 |

Names in bold italics indicate party retaining Fred Hyde as expert.

Case 1:23-cv-00152-WCM    Document 572-3    Filed 12/05/25    Page 17 of 22

3

DJH002458

**Fred Hyde, Activity as Expert Witness, 2021-2025, Deposition and Trial**

| Plaintiff | Defendant | Retaining Counsel | Address, Retaining Counsel | Case Number, Major Issue(s) | Incident Date | D = Deposition, R=Report, T =Trial |
|---|---|---|---|---|---|---|
| *Hannold, Gary* | John Doe Health System (protective order) | Thomas Robenalt | The Robenalt Law Firm, Inc., 23550 Center Ridge Road, Suite 103, Westlake, OH 44145 | CV 22 972666; delay in transfer, availability of specialists | December 21-26, 2021 | D, 6-6-25 |
| *Harris, Ebone and Wendell Fabian (for child, D.T.F.)* | Children's National Hospital, et al | Robert Michael; Eric Rosenberg | Shadoan, Michael & Wells, 108 Park Avenue, Rockville, MD 20850 | 2023-CAB-002626 | Feb. 24-28, 2020 | D, 12-18-24 |
| *Hoper-Santiago (Davon Hoper and Giselle Santiago-Zarate) for Island Hoper Santiago* | Charlotte Mecklenburg, d/b/a Atrium Health | David Stradley | White & Stradley, PLLC, 3105 Charles B. Root Wynd, Raleigh, NC 27612 | 22-CVS-2388; training, communication, coordination of care | Nov. 17-20, 2019 | D, 1-3-25 |
| *Jones, James & Suzanne (for Evelyn)* | Northside Hospital Forsyth, et al | Robert Michael; Don Keenan | Shadoan, Michael & Wells, 108 Park Avenue, Rockville, MD 20850 | File No: 22EV004098; policies concerning C-section, fetal monitoring, provider coverage, contract management, nursing competency | July 28-29, 2020 | D, 4-7-25 |
| *Juarez, Sylvia and Martin* | Christus Health, St. Vincent Regional Medical Center, et al | Greig Coates and Victor Poulos, Poulos & Coates | 1802 Avenida de Mesilla, Las Cruces, NM 88005 | Negligent credentialing; hospital preparedness for bariatric surgery patients; patient care policies, informed consent, continuity of care. | 8/8/2016 | D, 3-5-21 |
| *Kern, Nicholas and Sara for Evelyn (minor)* | MountainView Regional Medical Center, CHSPSC, LLC, et al | Victor Poulos, Greig Coats | Poulos & Coates, 1802 Avenida de Mesilla, Las Cruces, NM 88005 | Control of MountainView Regional Medical Center by CHSPSC | May 1 - 2, 2021 | D, 3-18-24 |
| Las Cruces Regional Medical Center, et al | *Foulston Siefkin, LLP, et al* | James (Jim) Kilroy | Snell & Wilmer, LLP, Tabor Center, Seventeenth Street, Suite 1900, Denver, CO 80202 | Disclosure of material risk in private placement, assessment and calculation of damages. | 2012-2019 | R, 10-30-24 |
| *Lovato, Benjamin* | Presbyterian Healthcare | Adrian Vega | Buckingham Barrera Vega Law Firm, 2125 Wyoming Blvd, Suite 100, Albuquerque, NM 871102 | No. D-202-CV-2022-01552; credentialing, privileging and supervision | 4/30/2019 | A, 2-23-2023; D, 6-17-25 |
| *Mashburn, Tina (for Billy, deceased)* | Southern Regional Medical Center | Lindsay Forlines, Esq., Xavier Carter | Forlines Law, LLC, 1226 Ponce de Leon Avenue, NE, Suite 200, Atlanta, GA 30306 | Civil Action No: 2020CV02176 | 7/30/2019 | D, 5-19-23; T, 5-21-25 |

Names in bold italics indicate party retaining Fred Hyde as expert.

Case 1:23-cv-00152-WCM    Document 172-3    Filed 12/05/25    Page 18 of 22

4

DJH002459

Fred Hyde, Activity as Expert Witness, 2021-2025, Deposition and Trial

| Plaintiff | Defendant | Retaining Counsel | Address, Retaining Counsel | Case Number, Major Issue(s) | Incident Date | D = Deposition, R=Report, T =Trial |
|---|---|---|---|---|---|---|
| Matsudo, Susan | **The Emergency Group, Abbey Mattes, MD, Reid Honda, MD** | Trisha Nishimoto, Esq. | Cades Schutte, LLP, 1000 Bishop Street, Suite 1200, Honolulu, HI 96813 | | | R, 5-23-25 |
| **Miller, Theresa (Estate of)** | Tanner Medical Center, Emory Clinic, et al | Lance Lourie, Lindsay Forlines | Watkins, Lourie, Roll & Chance, PC, 5607 Glenridge Drive NE, Suite 500, Atlanta, GA 30342 | Civil Action No: 21A00682 | Nov. - Dec. 2018 | D, 12-13-24 |
| **Moon, Debbie, and White** | Providence Health, Sacred Heart, Integra/Inland | Mark Kamitomo | Luvera Law Firm, 421 West Riverside Avenue, Suite 1060, Spokane, WA 99201 | Incidental lung nodule finding, radiology-ED communication, EMR-Radiology link | | D, 8-25-25 |
| **Murphy, Dennis for Grace Morrisey** | San Juan Regional Medical Center, Inc., Northwest New Mexico Women's Health Specialists, LLC and Daniel Chang, M.D. | Adrian Vega | Buckingham & Vega, 2125 Wyoming Blvd NE, Suite 100, Albuquerque, NM 87112 | D-101-CV-2021-0017. Prompt C-section; fidelity to hospital policies; hiring, orientation, supervision of nurses; culture of safety; informed consent. | May 19-20, 2012 | D, 5-6-24; T, 9-10-25 |
| **Nguyen, Jennifer and Thuan (for Alex)** | Piedmont Eastside Medical Center, Children's Healthcare of Atlanta | Andrew (Andy) Conn | Harris Lowry Manton, LLP, 1318 Dresden Drive NE, Suite 250, Brookhaven, GA 30319 | 23-C-04534-S3; EMTALA, stroke alert protocols, policies and procedures | Sept. 1-2, 2021 | D, 3-17-25 |
| Nichols, Nichelle | **HEALTHTECH MANAGEMENT SERVICES, INNOVA EMERGENCY MEDICAL ASSOCIATES, P.C., ESS HOSPITALIST** | Veronica Mireles | Mayer LLP, 9400 Holly Avenue, Building 3, Albuquerque, NM 87122 | Cause No. D-101-CV-2023-01545 , Negligent credentialing | 7/22/2022 | D, 3-4-25 |
| **O'Mara, Joseph and Marion** | Diagnostic Clinic Medical Group, et al | John w. Andrews, Esq. | Andrews Law Group, 3220 Henderson Blvd, Tampa, FL 33609 | Case No: 07-9167-CI, Multi-specialty group practice, responsibilities. Vaccination checklist. | 2000-2003 | D, 1-29-24 |
| **Paschal, Laurie Lee and Eric** | Las Cruces Medical Center d/b/a MountainView, Apogee, et. al. | Greig Coates, Poulos and Coates | 1802 Avenida de Mesilla, Las Cruces, NM 88005 | Primary stroke center, protocols, compliance of hospital staff with stroke protocols, control of MVRMC by CHSPSC | 1/24/20-1/25/20 | D, 12-9-22 |
| **Penella, Richard (for Idalmis, deceased)** | Piedmont Atlanta | Kevin Race and Glenn Kushel | Race Law, 5555 Glenridge Connector, Suite 550, Atlanta, GA 30343 and Cunningham Bounds, 5555 Glenridge Connector, Suite 550, Atlanta, GA | Case No: 2022EV007031; credentialing and supervision of Dermatologist and PA; discharge planning; communication and coordination of care | Jan. 1 - 12, 2022 | D, 5-12-25 |

Names in bold italics indicate party retaining Fred Hyde as expert.

5

DJH002460

**Fred Hyde, Activity as Expert Witness, 2021-2025, Deposition and Trial**

| Plaintiff | Defendant | Retaining Counsel | Address, Retaining Counsel | Case Number, Major Issue(s) | Incident Date | D = Deposition, R=Report, T =Trial |
|---|---|---|---|---|---|---|
| *Raile, Reid* | Colorado Retina Associates | Jim Leventhal, Curtis Schreiber | Leventhal Puga Braley, PC, 950 South Cherry Street, Suite 600, Denver, CO 80246 | Case No. 2024CV30755; staff training, orientation, physician delegation | March 9, 2022*ff* | R, 5-15-25; D, 6-20-25 |
| *Profitt, Correnia* | Highlands Hospital Corporation (d/b/a Highlands Regional Medical Center) | Lesley Cayton | Whiteford, Taylor & Preston, 161 North Eagle Creek Drive, Suite 210, Lexington, KY 40509 | Civil Action No.:7:19CV15; coordination of care; discharge instructions; EMTALA; appropriateness of hosp acceptance of patient | Jan. 2-3, 2017 | D, 7-28-21 |
| *Ritch, Alexandria* | Presbyterian Santa Fe Medical Center, et al | Mark Cox, Egolf + Ferlic + Martinez + Harwood | 123 West San Francisco Street, Second Floor, Santa Fe, NM 87501 | No. D-101-CV-2022000418; Negligent credentialing, supervision; staff training for opening of new labor and delivery service | Jan. 11-12 2020 | D, 1-23-24 |
| *Ruelas, Estefania and Jaime Vizcarra (for Genesis Vizcarra)* | PHC-Las Cruces, Inc., d/b/a Memorial Medical Center, HSCGP, LLC, et al | Victor Poulos, Poulos & Coates, LLP | 1802 Avenida de Mesilla, Las Cruces, NM 88005 | Cause No. D-307-CV-2021-01540; control of MMC by HSCGP | September 3, 2018 - April 17, 2020 | D, 7-11-22 |
| *Sanford, Willie and Yolynda for Estate of Nykevia Sanford* | Phoebe Sumter, Navicent | Lindsay Forlines, Esq. | Forlines Law, LLC, 1226 Ponce de Leon Avenue, NE, Suite 200, Atlanta, GA 30306 | Civil Action File No. 19-SCCV-089692, Transfer, communication; readiness for Sickle Cell treatment. | November 13-15, 2017 | D, 6-9-22, T-6-8-23 |
| *Scott, Beulah (Estate of)* | Medical Center of Central Georgia | Curtis Dickinson | Dickinson Law Firm, 1198 Buckhead Crossing, Suite F, Woodstock, GA 30189 | 2022-CV-075890; patient fall, failure to diagnose spinal injury, deficient fall policies; training, adequacy and evaluation of staff. | 1/25/2017 | D, 10-10-23 |
| *Scott, Charles* | Houston Medical Center, et al | Katherine McArthur | McArthur Law Firm, 6055 Lakeside Commons Drive, Suite 400 Macon, GA 31210 | 2023-V-55307; fall prevention, Ticket to Ride, patient abandonment, staff supervision. | 6/16/2021 | D, 7-29-25 |
| *Sena, Edward* | Presbyterian Healthcare | Adrian Vega | Buckingham Barrera Vega Law Firm, 2125 Wyoming Blvd, Suite 100, Albuquerque, NM 871102 | No. D-202-CV-2022-01548, credentialing, privileging, supervision | 4/23/2019 | A, 2-23-2023 |
| Shehane, Keaka (for Michael, deceased) | *Ankur Khosla, MD; Townsen Memorial Hospital; SurGenTec, LLC, et al* | Nathaniel Martinez | Mayer, LLP, 2900 North Loop West, Suite 500 Houston, TX 77092 | Cause Number 2023-35921; Negligent credentialing; medical device; physician-owned hospital | 8/26/2021 | Settled, 6-21-24 |

Names in bold italics indicate party retaining Fred Hyde as expert.

**Fred Hyde, Activity as Expert Witness, 2021-2025, Deposition and Trial**

| Plaintiff | Defendant | Retaining Counsel | Address, Retaining Counsel | Case Number, Major Issue(s) | Incident Date | D = Deposition, R=Report, T =Trial |
|---|---|---|---|---|---|---|
| *Stone, James* | Piedmont Heart Institute, Piedmont Atlanta Hospital, American Anesthesiology of Atlanta, David Grenda, M.D. | Katherine McArthur | McArthur Law Firm, 6055 Lakeside Commons Drive, Suite 400 Macon, GA 31210 | Civil Action No. 20EV000398; compartment syndrome, compression wrap, neglect, role of standing orders. | 1/18-19/2019 | D, 10-18-23 |
| *Valdez, Gabrielle (for Dominic Romero)* | Presbyterian Healthcare | Adrian Vega | Buckingham Barrera Vega Law Firm, 4110 Cutler Ave, Suite 100, Albuquerque, NM 87110 | STATE OF NEW MEXICO, COUNTY OF BERNALILLO, SECOND JUDICIAL DISTRICT COURT, NO: D-202-CV-2017-01773. NICU communication and coordination of care; timeliness of diagnostic testing; contracted services. | Nov. 25-29, 2014 | D, 5-20-21 |
| Vierkant, Lisa and Steven | *Sound Physicians of Massachusetts, et al* | Bob Hurstak | Dunn and Dunn, 11 Beacon Street, Suite 1100, Boston, MA 02108 | Docket No.: 2082CV01054 | January and February 2018 | R, 3-1-25 |
| *Walsh, Joseph* | Michael Hubbell, M.D., and Multicare Health System, d/b/a Multicare Rockwood ENT Center, and Kristopher Spinning, M.D., and Radia, Inc. P.S. | David Crump, Bruce Lambrecht | 10303 Meridian Ave. N. Ste 203 Seattle, Washington 98133 | No. 21-2-03377-32 (Spokane), corporate responsibility, informed consent. | 12/26/2017 | D, 10-30-24 |
| *Wheeler, Peter B.* | Georgia Pain and Wellness, LLC | Lance Lourie | Watkins, Lourie, Roll & Chance, PC, 5607 Glenridge Drive NE, Suite 500, Atlanta, GA 30342 | No. 19A75456; negligent credentialing and supervision CRNA, documentation, informed consent | 11/8/2017 | D, 6-24-22 |
| *White, Cheryl (Estate)* | Houston Medical Center, et al | Kathy McArthur | McArthur Law Firm, 6055 Lakeside Commons Drive, Suite 400 Macon, GA 31210 | CV-2021-V-53015; delayed treatment and Rapid Response Team | 9/9/2019 | D, 11-13-23 |
| *Youngers, Joleen (for Joseph F. Barela, deceased)* | Las Cruces Medical Center, LLC d/b/a MountainView Regional Medical Center and CHSPSC, LLC, and Stephen Stampp, MD | Victor Poulos, Poulos & Coates, LLP | 1802 Avenida de Mesilla, Las Cruces, NM 88005 | D-307-CV-2019-02427; negligent retention, supervision; trauma center readiness; coordination and timeliness of care, related issues. | December 11-18, 2017 | D, 7-27-21 |

Names in bold italics indicate party retaining Fred Hyde as expert.

Exhibit 4

**Fred Hyde & Associates, Inc.**
**Colt's Pond, P.O. Box 362**
**Ashford, CT 06278**
**(203) 417-3159, fredhyde@aol.com**

**Fee Schedule for Fred Hyde, MD, JD, MBA**

Hourly work, including research, review of materials, writing, reports, billed at a rate of $500 per hour against an initial retainer of $7,500.  Unused or uncommitted portions of a retainer are returned.

Payment for deposition in advance, by deposing party, $4,000, remote only, $5,000 in person, refunded completely if deposition is canceled.

Testimony at trial, $5,000 remotely by Zoom or similar technology, or, if travel is involved, $5,000 per 24-hour time period away from office (pro-rated after the first 24 hours). Expenses as incurred.

To date I have billed and received $7,500 for work on this case.