# EXHIBIT E



CERTIFIED MAIL, Return Receipt Requested, and EMAIL

PERSONAL AND CONFIDENTIAL

March 12, 2020

David Hetzel, MD
Hope Women's Cancer Center
100 Ridgefield Court
Asheville, NC 28806
David.Hetzel@HCAhealthcare.com

Dear Dr. Hetzel:

As previously discussed, you were placed on precautionary suspension effective March 3, 2020. The Credentials Committee (hereinafter "Committee") met on March 10, 2020 to review and consider this precautionary suspension.

Consistent with Articles IV and V of the Policy on Appointment, Reappointment and Clinical Privileges of Mission Hospital (hereinafter "Policy"), a copy of that Policy is enclosed for your careful review, you are informed that the Committee decided as follows:

1. It will initiate further investigations into the preoperative, perioperative and postoperative care of the patients identified by the medical record numbers listed below. This will include the following aspects of your care: preoperative planning for each patient, surgical approach for each patient, intraoperative techniques for each patient, intraoperative decision making for each patient, post-operative care of each patient and, and post-operative communication with the patient and family.

2. The precautionary suspension will be modified to the following lesser sanctions, which take immediate effect:

   a. You may return to practice but you **must** at all times comply with the following conditions imposed by the Committee:

      i. You are required to have a concurrent consultation for all of your operative cases. That concurrent consultation must be provided by a qualified surgeon employed by Hope Women's Cancer Center and in good standing with the medical staff;

D45000139

ii. You are required to have another qualified surgeon scrub in with you for your operative cases. That qualified surgeon must employed by Hope Women's Cancer Center and in good standing with the medical staff;

iii. You may no longer supervise residents.

3. These lesser sanctions described in paragraph (2) above shall remain in effect pending the outcome of any hearing, unless earlier terminated or modified by the Credentials Committee, the Medical Executive Committee, or the Board.

The Credentials Committee has appointed the following individuals to serve on the Ad Hoc Investigating Committee ("Investigating Committee"): Garth Davis, MD; William Harlan, MD; Lemuel Kirby, MD; and Stacy Travis, MD. The Investigating Committee will further investigate this matter.

Please be advised that the nature of the questions being investigated include the following: (1) Patient SW MR#722729 who underwent surgery on 10 June 2019; (2) Patient AW MR#1122181 who underwent surgery on 31 December 2019; (3) Patient VC MR#2363521 who underwent surgery on 2 March 2020, and (4) concerns about your lack of participation in multidisciplinary breast conferences and other such issues as outlined in your 13 January 2020 final warning issued in connection with our peer review process.

The Investigating Committee will be charged with further investigating the general nature of the concern, the existing evidence of concern, the preoperative planning of this case, your surgical technique, and your availability for postoperative communication with the family along with any other issues as encountered in the investigation. This incident occurred while in final warning status for Code of Conduct related concerns rather than clinical condnct but your behavior, response to feedback, failure to participate in tumor board and submit cases for review, very recent sit down meeting with the Chief of Staff, and demeanor may all be factors in placing this investigation into context for further recommendations.

The ad hoc committee at its discretion may seek an external review of this most recent operative case, and may interview the surgeons involved and your Service Line Leader for additional background and details.

The general nature of the evidence related to the questions being investigated includes the medical records for the above referenced questions, the recollections of the surgeons involved in those cases, concerns about your behavior, and the information related to your attendance and presentation to the tumor board reviews, your very recent sit down meeting with the Chief of Staff, and your clinical and professional judgment.

Please see the enclosed Policy and in particular Article IV of the Policy for additional discussion of the process and procedure regarding the investigation.

Please be advised that the modification of the precautionary suspension to the sanction(s) listed above with respect to the requirement of concurrent consultation entitles you to hearing rights under Article V of the Policy on Appointment. See Section 5.1(a).

You have the right to request a hearing within thirty (30) days of receipt of this notice. A request for a hearing must be made, in writing, to me as Chief Executive and President of Mission Hospital. If I have not received a request for a hearing within that thirty (30) days, you shall be deemed to have waived the right to a hearing and to have accepted the recommendation or action involved. Please see Policy on Appointment Article V for additional discussion regarding hearing and appeal procedures.

Note that the decisions and actions described herein are confidential professional review activities and intended to be covered by the provisions of N.C. Gen. Stat. 131E-95 and the corresponding provisions of any subsequent federal or State statute providing protection to peer review or related activities.

The Credentials Committee Chair, Dr. Scott Joslin, remains available to you on 828-280-4222 for any questions or need for additional clarifications that arise as this inquiry proceeds.

Sincerely,

Chad Patrick
Chief Executive Officer
Mission Hospital

Enclosure:  Policy on Appointment, Reappointment and Clinical Privileges (38 pages)

cc:      Credentials Committee members
         Investigative Committee members

         Rachel Coleman
         Senior Operations Counsel
         NC Division

# POLICY ON APPOINTMENT, REAPPOINTMENT,

## AND CLINICAL PRIVILEGES

## OF

## MH MISSION HOSPITAL, LLLP

## 2019

D000143

# TABLE OF CONTENTS

PAGE

ADOPTION    1

I.    DEFINITIONS    2

II.    APPOINTMENT AND REAPPOINTMENT TO THE MEDICAL STAFF    4

   2.1    APPOINTMENT AND REAPPOINTMENT, GENERALLY    4

   2.2    QUALIFICATIONS FOR APPOINTMENT    4

     2.2.1    Basic Qualifications    4
     2.2.2    Waiver of Basic Qualifications    6
     2.2.3    General Qualifications    6

   2.3    APPLICANT'S OBLIGATION    8

   2.4    CONSIDERATION OF APPLICATION    9

     2.4.1    Procedure for Consideration of Application    9
     2.4.2    Service Line Leader Recommendation    10
     2.4.3    Credentials Committee Recommendation    11
     2.4.4    Medical Executive Committee Recommendation    12
     2.4.5    Board of Directors Action    12

   2.5    REAPPOINTMENT TO THE MEDICAL STAFF    13

III.    CLINICAL PRIVILEGES    15

   3.1    GENERAL    15
   3.2    BASIS FOR PRIVILEGES DETERMINATION    15
   3.3    TEMPORARY CLINICAL PRIVILEGES    16
   3.4    TELEMEDICINE PRIVILEGES    17
   3.5    EMERGENCY CLINICAL PRIVILEGES    18

IV.    REVIEW OF MEDICAL STAFF MEMBER CONDUCT    19

   4.1    PEER REVIEW AND INFORMAL PERFORMANCE
       IMPROVEMENT REVIEW    19
   4.2    BASIS FOR FORMAL REVIEW OF CONDUCT    19
   4.3    INITIATION OF INVESTIGATION    19
   4.4    INVESTIGATION    20
   4.5    PROCEDURE FOLLOWING INVESTIGATION
       21
   4.6    PRECAUTIONARY SUSPENSION OF CLINICAL PRIVILEGES    22

     4.6.1    Criteria for Initiation    22
     4.6.2    Credentials Committee Investigation    22

|  |  | 4.6.3. | Care of Suspended Member's Patients | 22 |
|  |  | 4.6.4. | Procedural Rights | 22 |
|  | 4.7 | | AUTOMATIC SUSPENSION OF MEMBERSHIP AND/OR CLINICAL PRIVILEGES | 23 |
|  |  | 4.7.1 | State License or Drug Enforcement Administration Certificate | 23 |
|  |  | 4.7.2 | State or Federal Health Care Programs | 23 |
|  |  | 4.7.3 | Medical Executive Committee Review of Certain Automatic Suspensions | 23 |
|  |  | 4.7.4 | Medical Records | 23 |
|  |  | 4.7.5 | Professional Liability Insurance | 24 |
|  |  | 4.7.6 | Failure to Provide Requested Information | 24 |
|  |  | 4.7.7 | Continuing Education Requirements | 24 |
|  |  | 4.7.8 | Meet with Medical Staff Officers | 24 |
|  |  | 4.7.9 | Medical Staff Immunization Policy | 24 |
|  |  | 4.7.10 | Conviction of a Felony | 25 |
|  |  | 4.7.11 | Notice of Suspension or Termination and Transfer of Patients | 25 |
|  | 4.8 | | LEAVE OF ABSENCE | 25 |
|  | 4.9 | | CONFIDENTIALITY | 26 |
| V. | | | HEARING AND APPEALS | 27 |
|  | 5.1 | | GROUNDS FOR HEARING | 27 |
|  | 5.2 | | REQUESTS FOR HEARING | 28 |
|  |  | 5.2.1 | Notice of Recommendation or Action | 28 |
|  |  | 5.2.2 | Request for Hearing | 28 |
|  |  | 5.2.3 | Time and Place for Hearing | 28 |
|  |  | 5.2.4 | Notice of Charges and Witness Lists | 28 |
|  |  | 5.2.5 | Hearing Panel, Hearing Officer | 29 |
|  | 5.3 | | HEARING PROCEDURE | 29 |
|  |  | 5.3.1 | Presiding Officer | 29 |
|  |  | 5.3.2 | Discovery | 29 |
|  |  | 5.3.3 | Pre-Hearing Conference | 30 |
|  |  | 5.3.4 | Failure to Appear | 30 |
|  |  | 5.3.5 | Record of Hearing | 30 |
|  |  | 5.3.6 | Rights of the Parties | 30 |
|  |  | 5.3.7 | Admissibility of Evidence | 31 |
|  |  | 5.3.8 | Postponements and Extensions | 31 |
|  |  | 5.3.9 | Burden of Going Forward and Burden of Proof | 31 |
|  |  | 5.3.10 | Adjournment and Conclusion | 31 |
|  |  | 5.3.11 | Deliberations and Recommendation of the Hearing Panel | 31 |
|  |  | 5.3.12 | Disposition of Hearing Panel Report | 32 |

5.4     APPEAL TO THE Board of Trustees     32

       5.5.1    Time for Appeal     32
       5.5.2    Grounds for Appeal     32
       5.5.3    Time, Place, and Notice     32
       5.5.4    Appellate Review Procedure     32
       5.5.5    Final Decision of the Board     33
       5.5.7    Right to One Hearing and One Appeal Only     33

VI.     AMENDMENTS     34

# POLICY ON APPOINTMENT, REAPPOINTMENT, AND CLINICAL PRIVILEGES

## OF

## MH MISSION HOSPITAL, LLLP

### <u>ADOPTION</u>

This Policy is adopted and made effective upon approval of the Board, superseding and replacing any and all other Medical Staff Bylaws, Rules and Regulations, or Hospital policies pertaining to the subject matter thereof.

## APPROVED BY THE BOARD OF TRUSTEES:

**July 17, 2019**
**Updated 10/15/19**

00147

# ARTICLE I

## DEFINITIONS

The following definitions apply to terms used in these Bylaws:

1.1. **"Advanced Practitioner"** means Physician Assistants ("PAs"), Nurse Practitioners ("NPs"), Certified Registered Nurse Anesthetists ("CRNAs") and Certified Nurse Midwives ("CNMs").

1.2. **"Board"** means the governing body having the overall responsibility for the conduct of the Hospital;

1.3. **"Dentist"** means a Doctor of Dental Surgery and Doctor of Dental Medicine;

1.4. **"Dependent practitioner"** means a practitioner other than a member of the Organized Medical Staff or Advanced Practitioner, specified in the Policy on Allied Health Professionals, and who functions in the Hospital under the supervision of a member of the Medical Staff.

1.5. **"Ex officio"** means service as a member of a body by virtue of an office.

1.6. **"Hospital"** means MH Mission Hospital, LLLP hereinafter ("Mission") located in Asheville, North Carolina, and includes Facilities established therein.

1.7. **"Independent practitioner"** means a professional specified in the Policy on Allied Health Professionals who is permitted by law and the Hospital to provide care and service without direction or supervision, within the scope of the individual's license and consistent with individually granted clinical privileges.

1.8. **"Mail"** means communication sent via email, Fed Ex, or U.S. Postal Service mail.

1.9. **"Medical Executive Committee"** ("MEC") is the delegated authority in accordance with law and regulation to carry out medical staff responsibilities. The MEC has the primary authority for activities related to self-governance of the medical staff and for performance improvement of the professional services provided by licensed independent practitioners and other practitioners privileged through the medical staff process.

1.10. **"Organized Medical Staff"** ("Medical Staff") means all physicians, dentists, podiatrists, and psychologists who are members of the Medical Staff and are given privileges to treat patients at the Hospital;

1.11. **"Oral Surgeon"** means licensed dentists who have successfully completed a post-graduate program in Oral Surgery accredited by a nationally recognized accrediting body approved by the United States Office of Education;

1.12. **"Physician"** means both Doctor of Medicine ("M.D.") and Doctor of Osteopathy ("D.O.");

1.13. **"Podiatrist"** means Doctor of Podiatric Medicine ("D.P.M.");

1.14. **"President" or "President of the Hospital"** means the individual appointed by the Board to act on its behalf in the overall administrative management of the Hospital, or that person's designee;

1.15. **"Psychologist"** means Doctor of Psychology ("Ph.D." or "Psy.D.");

Words used in these Bylaws shall be read as the masculine or feminine gender, and as the singular or plural, as the content requires. The captions or headings are for convenience only and are not intended to limit or define the scope or effect of any provision of the Bylaws.

# ARTICLE II

## APPOINTMENT AND REAPPOINTMENT TO THE MEDICAL STAFF

### 2.1    APPOINTMENT AND REAPPOINTMENT, GENERALLY

(a)    Appointment to the Medical Staff is a privilege which shall be extended only to professionally competent individuals who continuously meet the qualifications, standards, and requirements set forth in this Policy and in such policies as are adopted from time to time by the Board. All individuals practicing medicine, dentistry, psychology or podiatry in this Hospital, unless otherwise provided for by specific provisions of this Policy, must first have been appointed to the Medical Staff.

(b)    No individual shall be entitled to appointment to the Medical Staff or to the exercise of particular clinical privileges in the Hospital merely by virtue of the fact that such individual is licensed to practice a profession in this or any other state; is a member of any particular professional organization; has had in the past, or currently has, Medical Staff appointment or privileges at any hospital; or resides in the geographic service area of the Hospital as defined by the Board.

(c)    No individual will be denied appointment or clinical privileges on the basis of race, color, religion, sex, national origin, age, disability, genetic information or veteran status, or on the basis of any criteria unrelated to the delivery of quality patient care at the Hospital, to professional qualifications or to the Hospital's purposes, needs and capabilities.

(d)    All Medical Staff appointees and others exercising clinical privileges at the St. Joseph campus shall abide by the terms of the Ethical and Religious Directives for Catholic Health Care Services promulgated by the National Conference of Catholic Bishops with respect to their practice at the St. Joseph campus. No activity prohibited by said Directives shall be engaged in by any Medical Staff appointee or other person exercising clinical privileges at the St. Joseph campus.

### 2.2    QUALIFICATIONS FOR APPOINTMENT

2.2.1    Basic Qualifications

In order to obtain or maintain membership on the Medical Staff, or be granted clinical privileges, applicants must have and document:

(a)    current unrestricted license to practice in North Carolina, and federal DEA Registration Certificate, if applicable;

(b)    practice location, within the geographic service area of the Hospital as defined by

the Board, close enough to provide timely care for their patients;

(c) current, valid professional liability insurance coverage in the amount of at least one (1) million dollars per claim and one three (3) million dollars in the aggregate, with a company licensed or approved to do business in the State of North Carolina;

(d) for each physician, successful completion of an accredited ACGME/AOA residency training program, of a three (3) year minimum, in the specialty in which the applicant seeks clinical privileges. (This qualification shall not apply to individuals appointed to the Medical Staff prior to September 8, 1992);

(e) (1) for physicians submitting an application after July 29, 2010, board certification by a board recognized by the American Board of Medical Specialties, the American Osteopathic Association as applicable, or fulfill the requirement for candidacy for board admission in the specialty for which the applicant is applying for privileges. All such new applicants must become board certified in the specialty or subspecialty in which they practice within six (6) years of completion of the applicable training program and maintain certification in the specialty or subspecialty in which they practice for the duration of Medical Staff appointment. For those individuals appointed to the Medical Staff between the dates of July 29, 2010 and September 25, 2014, this qualification shall not apply; however board certification in the specialty or subspecialty of practice must be attained no later than six (6) years from the date of joining the Mission Medical Staff. For those individuals who (as of September 25, 2014) are more than six (6) years beyond the completion of the applicable training program, but less than six (6) years from joining the Medical Staff, Focused Professional Practice Evaluation (FPPE) reviews shall be conducted every three (3) months until board certification is obtained. Applicants in Medical Staff categories where clinical privileges are not granted may be excused from these requirements. In specialties where multiple certificates of added qualification exist, the requirements for applicable subspecialty board certification will be noted on the privilege delineation form;

(2) for psychologists providing direct patient services, a license that includes a Health Service Provider certification by the N.C. Psychology Board;

(3) for podiatrists, board certification by the American Board of Foot and Ankle Surgery within six (6) years of appointment to the Medical Staff;

(f) (1) All physician applicants for initial appointment shall present documentation of 40 hours of Category 1 Continuing Medical Education for a two (2) year period. Applicants applying directly from an ACGME or AOA accredited residency or fellowship are considered to have met this requirement.

Physicians who maintain annual recertification or maintenance of certification (MOC) through an ABMS or AOA specialty board shall be designated as having met the CME requirement;

(2) for dentists and oral surgeons, 30 hours of continuing education over two

(2) years, including a course in CPR;

(3)     for psychologists, 18 hours of continuing education over two years;

(4)     for podiatrists, 50 hours of continuing education over two years; and

(5)     for all applicants, a portion of the continuing education must support the privileges requested.

(g)     appropriate arrangements for coverage of that member's patients as determined by the Medical Executive Committee.;

(h)     that they have never been convicted of , or entered a plea of guilty or no contest to any felony, or to any misdemeanor relating to controlled substances, illegal drugs, insurance or health care   fraud or abuse or violence;

(i)     that they have never been excluded from participation in Medicare, Medicaid or other federal or state governmental program;

(j)     that they have never had their appointment, clinical privileges, membership or professional license  denied, revoked, suspended or terminated by any health care facility, licensing board, regulatory body or health plan for reasons related to clinical competence or professional conduct; and

(k)     that they have never resigned an appointment or relinquished privileges at any health care facility, or resigned or relinquished any professional license, membership or other professional appointment or position during an investigation or in exchange for not conducting an investigation.

(l)     Compliance with the Medical Staff Immunization Policy.

2.2.2   Waiver of Basic Qualifications

When an exceptional circumstance exists, the applicant or member may request a waiver of the Basic Qualifications listed in Section 2.2.1 above. The individual requesting the waiver bears the burden of demonstrating exceptional circumstances. There is no right to a waiver, which may be granted by the Board after receiving recommendations from the Medical Staff Credentials Committee and the Medical Executive Committee.   Failure to grant a waiver does not trigger any hearing or appeal rights under Article V of the Policy on Appointment, Reappointment and Clinical Privileges.

2.2.3   General Qualifications

In order to obtain or maintain membership on the Medical Staff, or be granted clinical privileges, applicants must have and document:

(a)     relevant training, experience and demonstrated current competence, including medical/clinical knowledge, technical and clinical skills, clinical judgment and an understanding of the contexts and systems within which care is provided;

(b)    their adherence to the ethics of the profession, good reputation and character, continuous professional development, an understanding of and sensitivity to diversity, and the responsible attitude toward patients and the profession;

(c)    their ability to safely and competently perform the clinical privileges requested, including recent clinical activity in the primary area of practice during at least two of the last three years;

(d)    their ability to work harmoniously with others, including but not limited to, interpersonal and communication skills sufficient to enable them to maintain professional relationships with patients, families and other members of healthcare teams.

(e)    their adequate physical and mental health, so as to demonstrate to the satisfaction of the Medical Executive Committee that they are competent to render to any patient care of the generally recognized professional level of quality established by the Medical Executive Committee and the Board;

(f)    their promise to behave consistent with Hospital policies that further mercy, excellence, respect, integrity and teamwork/trust (MERIT), as well as the Mission Health System Guiding Principles;

(g)    their promise to abide by all federal and State regulations with respect to professional billing practices; including not cooperating or participating in the division of any fee for professional services;

(h)    their promise to abide by all decisions of duly-appointed Medical Staff committee and cooperate in safe patient care, treatment and services and Medical Staff activities, including proctoring, performance improvement, utilization review, peer review, and attendance at Medical Staff and Service Line meetings;

(i)    their promise to prepare and complete, in a timely, accurate and legible manner, the medical record and other required records for all patients the member provides care to while at the Hospital;

(j)    their promise to notify the Chief of Staff in writing of any North Carolina licensing board accusation, reprimand, change in license status, or other adverse action by any health care entity or law enforcement agency including any reprimand, change in license status; conviction of a misdemeanor or felony; the settlement or adverse judgment or verdict of any professional liability claim or suit against the member; voluntary or involuntary termination of Medical Staff membership or voluntary or involuntary limitation or imposition of a monitoring requirement; reduction, loss or change of clinical privileges at another health care entity; contact by an investigator from a regulatory agency such as FDA, DEA or North Carolina licensing board regarding an investigation of the practitioner;

(k)    their promise to notify the Chief of Staff in writing immediately of any termination of malpractice insurance coverage or change in coverage amount below the minimum required by this Policy;

(l)     their promise to provide the Chief of Staff in writing immediately information as to details of any prior or pending government agency or third-party payor proceeding or litigation challenging or sanctioning applicant's patient admission, treatment, discharge, charging, collection, or utilization practices, including but not limited to, Medicare and Medicaid fraud and abuse proceedings and convictions;

(m)    their promise to abide by the Medical Staff Bylaws, Rules and Regulations and related Bylaw documents; the policies and requirements of the Service Line of which they are a member; the Bylaws of the Hospital, and other policies of the Medical Staff and the Hospital, including policies regarding discrimination and harassment; the Code of Conduct, and policies regarding the privacy, confidentiality and security of Protected Health Information;

(n)     their promise to meet all educational requirements for membership such as training on computer systems, training on compliance standards including HIPAA, and other training as required by the credentialing process or the Medical Executive Committee;

(o)     their promise to participate in emergency or other Service Line coverage as specified in the requirements of the Service Line of which they are a member or the Medical Executive Committee, or any consultation responsibilities as may be determined by the Service Line leader, Chief of Staff or the Medical Executive Committee;

(p)     their promise to participate in quality assurance, quality improvement, and peer review activities of the Medical Staff and the Service Line as assigned by the Service Line leader or as required by these Bylaws or policies of the Medical Staff or Hospital, and to hold knowledge of the content of these activities as strictly confidential;

(q)     their promise to notify the Chief of Staff in writing of any geographical relocation of practice;

(r)     their promise to notify the Chief of Staff in writing within thirty (30) days of any change in clinical privileges at other hospitals, whether voluntary or involuntary; and

(s)     their promise to pay promptly any applicable Medical Staff dues.

## 2.3    APPLICANT'S OBLIGATIONS

The applicant for appointment, reappointment or clinical privileges will:

(a)     have the burden of submitting a properly completed application; properly completed means that all provisions have been completed or an explanation provided of any that are not, and all required supporting documentation has been submitted. An application that is not complete will not be processed; an application that continues to be incomplete ninety (90) days after the applicant has been notified

of the additional information required shall be deemed to be withdrawn;

(b)    have the burden of producing complete, accurate and adequate information for a proper evaluation of the applicant's qualifications, including all requirements specified in the Medical Staff Bylaws and this Policy on Appointment and Reappointment to the Medical Staff, for resolving any doubts about these matters, and of providing any additional information requested by the Credentials Committee, the Medical Executive Committee or the Board;

(c)    have the burden of providing, with or without request, any new or updated information, as it occurs, that is pertinent to any question on the application form;

(d)    appear, if requested, for personal interviews in regard to the application;

(e)    authorize the release of all information necessary for an evaluation of the applicant's qualifications for appointment, reappointment, and clinical privileges, including information from other hospitals, professional training programs, professional licensing agencies, professional organizations, professional liability carriers, public or private payors, and personal physicians pertaining to the applicant's physical and mental health status;

(f)    authorize the Hospital to procure criminal investigative background reports regarding the individual's background for review in connection with the individual's application and during the time when the individual may function as a member of the Medical Staff or exercise any clinical privileges at the Hospital, for whatever reasons the Hospital deems appropriate;

(g)    release from liability all representatives of the Hospital and the Medical Staff for their acts performed in good faith in evaluating the applicant's qualifications;

(h)    release from liability all individuals and organizations who in good faith provide information to the Hospital and Medical Staff concerning the applicant, including otherwise privileged or confidential information;

(i)    acknowledge that he/she has received a copy of (or has been given access to), and read the Medical Staff Bylaws and related documents, and that he/she agrees to be bound by the terms thereof, as they may be amended from time to time, if he/she is granted membership or clinical privileges, and to be bound by the terms thereof without regard to whether or not he/she is granted membership and/or clinical privileges in all matters relating to the consideration of this application; and

(j)    pay a credentialing processing fee, as determined by the Medical Executive Committee.

## 2.4    CONSIDERATION OF THE APPLICATION

2.4.1  Procedure for Consideration of the Application

(a)    An individual requesting an application for appointment will initially be sent a

letter, along with an application, that outlines the Basic Qualifications, as detailed in Section 2.2.1. above, for appointment and applicable clinical privileges, and that explains the credentials review process.

(b)     An application for appointment and/or clinical privileges from an individual who meets the Basic Qualifications is submitted to the President of the Hospital or designee. The application must be accompanied by payment of the processing fee. Failure to pay the processing fee will deem the application incomplete: for new applicants it will be considered withdrawn and not processed; for reappointments it will be processed as a voluntary resignation.

(c)     If, after review of the application, it is determined by the President, or designee, that the applicant does not meet the Basic Qualifications, the application and/or clinical privileges request will be deemed to have been voluntarily withdrawn by the applicant.

(d)     Providing information containing misrepresentations or omissions will be grounds to stop the process of application or reapplication. The Practitioner will be informed in writing of the nature of the misstatement or omission and permitted to provide a written response. The Chair of the Credentials Committee and Chief Executive Officer (or designee) will review the response and determine whether the Application should be processed. If Membership or Clinical Privileges have been granted prior to the discovery of a misstatement or omission, Membership and Clinical Privileges may be deemed to be automatically relinquished pursuant to this Policy. No action taken pursuant to this Section will entitle an Applicant or Practitioner to a hearing or appeal.

(e)     The President of the Hospital, or designee, will notify the applicant, within forty-five (45) days of receipt of an application, of any areas of the application that are incomplete, of the failure of others to respond to information collection or verification efforts, or of the applicant's failure to satisfy any of the obligations of this Section 2.3. After this notification it will then be the applicant's obligation to ensure that all required information is submitted and all of the applicant's obligations are satisfied. Failure to complete the application and/or to submit any additional requested information within thirty (30) days of this notification by the President of the Hospital, or designee, may, in the sole discretion of the President of the Hospital, or designee, be deemed a voluntary withdrawal of the application and not subject to challenge under Article X of this Policy on Appointment and Reappointment. If temporary membership and clinical privileges were granted pending the completion of the application, they will be deemed expired at this time.

(f)     After review and verification of all required information in the completed application by the Medical Staff Services Office, the President of the Hospital, or designee, will transmit the application and all supporting materials to the appropriate Service Line Leader(s).

(g)     It is expected that, after a completed application for Medical Staff membership has been received, it will be acted on by the applicable Service Lines, the Medical Staff Credentials Committee and the Medical Executive Committee within ninety (90) days. Any time periods specified in this Section, however, are to assist those

named in accomplishing their tasks and will not be deemed to create any right of the applicant to have his/her application processed within those periods.

2.4.2   Service Line Leader Recommendation

(a)   After examination of the completed application and making appropriate inquiry, the Service Line Leader will submit a written report to the Credentials Committee concerning the applicant's competence, ability to perform the clinical privileges requested, character, health and ethics, and make a recommendation as to:

(1)   whether the applicant should be appointed to the Medical Staff; and

(2)   what specifically delineated clinical privileges should be granted to the applicant, and in which Service Line(s).

(b)   In the event the Service Line Leader is unable to evaluate an applicant's qualifications for appointment, the Service Line Leader will make this fact known to the Credentials Committee.

2.4.3   Credentials Committee Recommendation

(a)   The Chair of the Credentials Committee will examine the completed application, the report of the Service Line Leader and all supporting materials, and, with another member of the Credentials Committee or a senior member of the Medical Staff Services Office, interview the applicant.

(b)   After the examination of the application and interview of the applicant, the Chair of the Credentials Committee will determine whether to recommend expedited Board approval for the application. Expedited Board approval grants an applicant an interim appointment to the Medical Staff with clinical privileges for a period not to exceed the interval until the interim appointment is reviewed at a meeting of the Board Credentialing and Professional Affairs Committee. Expedited Board approval may occur, after consideration of the applicant's professional competence, character, qualifications, prior behavior and ethical standing, upon the recommendation and approval of the Service Line Leader, the Chair of the Credentials Committee, the Chair of the Medical Executive Committee, and two members of the Board of Trustees. Expedited Board approval may be granted only when a thorough review of the application and the applicant reveals none of the following:

(1)   claims activity (i.e. past malpractice claims, settlements, or judgments) that is excessive or not reasonable in light of his or her specialty;

(2)   previous felony convictions;

(3)   evidence of previous disruptive behavior;

(4)   significant reports of quality of care, outcomes or patient satisfaction concerns;

(5) a history of changing practice affiliations more than three (3) times in the past ten years; (this element will be considered but will not be an absolute disqualifier for expedited Board approval);

(6) a history of pending or past investigations or disciplinary actions from any hospital or licensing agency; or

(7) a history of involuntary termination of medical staff membership at another hospital or involuntary limitation, reduction, denial or loss of clinical privileges at any location.

(c) For applicants and applications that do not meet the criteria for expedited Board approval, after examination of the completed application, and review of the Service Line Leader's recommendation and supporting materials, the Credentials Committee will submit a written report to the Medical Executive Committee concerning the applicant's competence, ability to perform the clinical privileges requested, character, health and ethics, and make a recommendation as to:

(1) whether the applicant should be appointed to the Medical Staff; and

(2) what specifically delineated clinical privileges should be granted to the applicant, and in which Service Line(s).

(d) If the recommendation of the Credentials Committee is delayed longer than ninety (90) days, the Chair of the Credentials Committee will send a letter to the applicant, with a copy to the Medical Executive Committee and President of the Hospital, explaining the reasons for the delay.

2.4.4 Medical Executive Committee Recommendation

(a) Upon receipt of the recommendation of the Credentials Committee, the Medical Executive Committee will review this information, conduct any further investigation regarding the applicant's competence, ability to perform the clinical privileges requested, character, health and ethics, and make a recommendation to the Board. The Medical Executive Committee will:

(1) provide the Board with a recommendation that the applicant be appointed to the Medical Staff with specific clinical privileges requested;

(2) provide the Board with a recommendation that the applicant be appointed to the Medical Staff, but not with all of the specific clinical privileges requested; or

(3) provide the Board with a recommendation that the applicant will not be appointed to the Medical Staff.

(b) In the event that the Medical Executive Committee recommends (a)(2) or (a)(3) above, the applicant will be notified of his/her right to request a hearing under Article V of this Policy. No final action will be taken by the Board until the applicant has waived or exhausted his/her hearing rights.

2.4.5    Board of Trustees Action

(a)    Upon receipt of a recommendation from the Medical Executive Committee that an applicant be appointed to the Medical Staff and granted the clinical privileges requested, the Board (or its designated committee) may:

(1)    appoint the applicant and grant clinical privileges;

(2)    refer the matter to the Medical Executive Committee for additional research or information; or

(3)    reject the recommendation.

(b)    If the Board determines to reject a favorable recommendation of the Medical Executive Committee, it will make no final decision until the applicant has exercised or waived the rights to a hearing and appeal as outlined in this Policy.

(c)    Any final decision by the Board of Trustees to grant, deny, revise, or revoke appointment or clinical privileges will be forwarded in writing to the applicant and to the President of the Hospital.

## 2.5    REAPPOINTMENT TO THE MEDICAL STAFF

(a)    Reappointment to the Medical Staff will be for a period of not more than two (2) years. Following the initial appointment term, members will be reappointed on the month of their birth.

(b)    At least five (5) months prior to the expiration of each member's appointment term, the President of the Hospital, or a designee, will provide each member whose term is scheduled to expire, with a reapplication package. The completed reappointment package must be submitted to the President of the Hospital, or a designee, by the member at least three (3) months prior to the expiration of the member's current appointment period.

(c)    The reapplication will be processed in all respects in the same manner as applies under Sections 2.1 through 2.4 for applications for appointment to the Medical Staff, and the member will, in all respects, have the same rights and be subject to the same requirements and obligations as apply under Sections 2.1 through 2.4 for applications to the Medical Staff.

(d)    The properly completed reappointment package and all necessary documentation will be forwarded to the Service Line Leader for evaluation and review. The Service Line Leader will make a written recommendation as to whether the member should be reappointed to the Medical Staff and a recommendation of the specific clinical privileges requested. In making such recommendations, the Service Line Leader will consider the member's clinical performance while a member of the Medical Staff, including the results of quality assessment and peer review activities, focused professional practice evaluation or ongoing professional practice

evaluation, as appropriate, and recommendations from the member's peers. The recommendations of the Service Line Leader are forwarded to the Credentials Committee for review and written recommendation to the Medical Executive Committee; the written recommendations of the Medical Executive Committee are forwarded to the Board for action.

(e)     If, during the processing of a particular member's reappointment, it becomes apparent to the Credentials Committee or its Chairperson that the Committee is considering a recommendation that would be adverse to the member and entitle the member to the hearing and appeals right of Article X, the Chairperson of the Credentials Committee will notify the member of the general tenor of the possible recommendation and ask if the member desires to meet with the Committee, to discuss explain or refute the evidence presented, prior to the Credentials Committee's recommendation to the Medical Executive Committee. This meeting will not constitute a hearing and none of the procedural rules provided in this Policy with respect to hearings will apply. Minutes of the discussion in the meeting will reflect the concerns that were raised, the fact that the affected individual was notified of the concerns, and the individual's response to the same.

(f)     If a completed reappointment package is not returned by the member within the time period specified in Section 2.5(b) above, the member may be processed as having voluntarily resigned effective on the date his/her appointment expires, except in the event of an ongoing formal review of the member's conduct or performance, or unless otherwise extended by the Medical Executive Committee, subject to the Board's approval, and such other penalties as may be imposed by the Medical Executive Committee, subject to Board approval.

# ARTICLE III
# CLINICAL PRIVILEGES

## 3.1 GENERAL

(a) Members of the Medical Staff are entitled to exercise only those delineated clinical privileges specifically granted by the Board.

(b) All clinical privileges must be requested and processed pursuant to the procedures outlined in Article II, unless otherwise stated in these Bylaws.

(c) A member of the Medical Staff may apply for additional clinical privileges on a form prescribed for that purpose and approved by the Board. The application will be processed in the same manner, and the applicant will have the same rights and obligations, in all respects, as apply under Article II to an application for appointment and reappointment to the Medical Staff.

(d) All clinical privileges initially granted to a member of the Medical Staff by the Board are provisional and subject to the terms of Section 2.10 of the Medical Staff Bylaws.

(e) Residents and Fellows are not members of the Medical Staff and do not have independent privileges to admit or treat patients at the Hospital. The scope of practice and specific policies and procedures governing the oversight of Residents and Fellows are defined by the curriculum requirements, affiliation agreements, performance parameters and/or training protocols approved by the Hospital and in accordance with the terms of the Accreditation Council for Graduate Medical education training program in which they are enrolled.

## 3.2 BASIS FOR PRIVILEGES DETERMINATION

(a) The Board, upon recommendation of the Medical Staff, will make an objective and evidenced-based decision on each request for clinical privileges.

(b) Requests for clinical privileges will be evaluated on the basis of the applicant's education, training, experience, current demonstrated professional competence and judgment, general competencies, and peer recommendations; applicant-specific information, including focused or ongoing professional practice evaluation, regarding applicant's clinical performance at this Hospital and in other settings or institutions where the applicant exercises clinical privileges, comparisons made to aggregate information (when available) about performance, judgment and clinical or technical skills; morbidity and mortality data (when available); current health status; the documented results of patient care and other quality review and monitoring that the Medical Staff deems appropriate; performance of a sufficient number of procedures to develop and maintain the practitioner's skills and knowledge; and compliance with any specific criteria applicable to the appointment or privileges, including training or proctoring that may be required.

## 3.3 TEMPORARY CLINICAL PRIVILEGES

A practitioner is eligible to be considered for temporary clinical privileges upon submission of a completed application after verification by the Hospital of current licensure, professional liability insurance coverage, relevant training and experience, current competence, ability to perform the privileges requested, a query and evaluation of National Practitioner Data Bank information, no current or previously successful challenge to licensure or registration, and no previous involuntary termination of medical staff membership at another hospital or limitation, reduction, denial or loss of clinical privileges. Verification of prior affiliations of applicants for temporary or locum tenens clinical privileges may be limited to the past five affiliations unless otherwise requested by the Chair of the Medical Staff Credentials Committee.

(a) Applicants Pending Approval by the Board

    (1) Temporary Privileges may be granted to Applicants for initial Membership, initial Clinical Privileges, or for members currently holding privileges who request additional privileges whose Complete Application is pending review by the Credentials Committee, Medical Executive Committee and/or Board. The exclusion criteria as noted in Section 2.4.3 of this policy would apply to granting of Temporary Clinical Privileges.

    (2) Requests for temporary Privileges for Applicants will be processed through the same process for RFCs/RRFCs/Applications for Membership and Clinical Privileges, as set forth in this Policy. Once an Applicant who is eligible for temporary Privileges has received a favorable recommendation of the Service Line Leader or Designee, Chair of the Credentials Committee or designee, and the Chief Executive Officer, upon recommendation of the Chief of the Medical Staff, may grant that Applicant temporary Privileges, which shall be effective immediately upon Notice to the Practitioner.

    (3) Temporary Privileges for initial Applicants will be granted until final action by the Board on the Application, not to exceed a term of 120 Days. Temporary Privileges for new Applicants will not be renewed.

(b) Non-Applicants to Fulfill Clinical Need

    (1) Temporary clinical privileges may be granted to a practitioner who is not an applicant for appointment to care for a specific patient or patients, to fulfill an important patient care need or to fulfill the coverage or proctoring needs of a Service Line or of the Hospital. The temporary privileges will be for a specific time period not to exceed ~~90~~ 120 days.

    (2) Temporary clinical privileges may also be granted to a practitioner who is not an applicant for appointment for the purpose of assisting a sponsoring Medical Staff member in the care of a specific patient or patients. Such privileges will be for a period not to exceed 120 days and are strictly limited in scope to assisting the sponsoring Medical Staff member.

(c) Locum Tenens

Temporary clinical privileges may be granted to a practitioner who is not an applicant for appointment for the purpose of serving as a locum tenens for a member of the Medical Staff. The practitioner may be granted temporary admitting and clinical privileges to attend patients of that member or member's group practice for a period not to exceed a total of ninety (90) days during twelve (12) consecutive months.

### 3.3.1 Special Requirements for Practitioners with Temporary Privileges

Special requirements of supervision and reporting may be imposed by the Service Line Leader concerned on any practitioner granted temporary clinical privileges. Temporary privileges will be terminated immediately by the President of the Hospital, or a designee, upon notice of any failure by the individual to comply with such special conditions.

### 3.3.2 Denial or Termination of Temporary Privileges

(a)   On the discovery of any information or the occurrence of any event of a nature that raises a question about a practitioner's professional qualifications, ability to exercise any temporary privileges granted, or compliance with these Bylaws, Rules and Regulations, requirements of the Service Line or other requirements imposed on a practitioner with temporary privileges, the President of the Hospital may terminate a practitioner's temporary privileges at any time after consulting with the Chief of Staff, the Chairperson of the Credentials Committee, or the supervising Service Line Leader for that practitioner.

(b)   In the event of any such denial or termination, the practitioner's patients in the Hospital will be assigned to a member of the Medical Staff by the Service Line Leader or the Chief of Staff, giving consideration, when feasible, to the wishes of the patient in the selection of the substitute.

(c)   The granting of any temporary admitting and clinical privileges is entirely a courtesy on the part of the Hospital and any or all may be terminated if a clinical question or concern has been raised.

### 3.4   TELEMEDICINE PRIVILEGES

(a)   Licensed independent practitioners who are responsible for the care, treatment and services of a Mission Hospital patient via electronic telemedicine link must be granted clinical privileges to do so by Mission Hospital.

(b)   Requests for initial or renewed telemedicine privileges will be processed through one of the following options, as determined by the President of the Hospital and the Chief of Staff:

(1)   A request for telemedicine privileges by a practitioner at a distant hospital may be processed by Mission Hospital through the same process as other

applicants for appointment and reappointment to the Medical Staff. The applicant must satisfy all qualifications and requirements for appointment and reappointment to the Medical Staff except those relating to geographic location; or

    (2)    A request for telemedicine privileges by a practitioner at a distant hospital may be processed by Mission Hospital relying on the credentialing information from the distant hospital, and, further, pursuant to a written agreement with the distant hospital that: the distant hospital or telemedicine entity participates in and complies with all applicable Medicare regulations and accreditation standards; provides confirmation that the practitioner is licensed in the state where the distant hospital is located; and provides a current list of privileges granted to the practitioner by the distant hospital. The information received about the individual requesting telemedicine privileges will be provided to the Medical Executive Committee for review and recommendation and to the Board for final action. Telemedicine privileges granted in conjunction with a contractual agreement will be incident to and coterminous with the agreement.

    (c)    Practitioners granted telemedicine privileges will be subject to the Hospital's peer review activities. The results of the peer review activities, including any adverse events and complaints file about the practitioner providing telemedicine services from patients, other practitioners or staff will be shared with the distant hospital or entity providing telemedicine services.

## 3.5    EMERGENCY CLINICAL PRIVILEGES

3.5.1   Patient Emergency

For the purposes of this Section, an "emergency" is defined as a condition in which a patient is in imminent danger of serious or permanent harm or death and any delay in administering treatment would add to that danger. In the case of an emergency, any practitioner, to the extent permitted by his or her license and regardless of department, staff status, or clinical privileges, will be permitted to do everything possible to save the life of a patient or to save a patient from such danger.

3.5.2   Emergency Operations Plan

Emergency privileges for licensed independent practitioners may be granted when the Hospital's Emergency Operations Plan is activated and the Hospital is unable to handle immediate patient needs. The President of the Hospital, or the Chief of Staff, may grant emergency temporary privileges to a practitioner upon presentation of appropriate identification and licensure as outlined in the Hospital's Emergency Operations Plan.

# ARTICLE IV

## REVIEW OF MEDICAL STAFF MEMBER CONDUCT

**4.1 PEER REVIEW AND INFORMAL PERFORMANCE IMPROVEMENT REVIEW**

Peer Review, Patient Safety Event Review, Code of Conduct Review, Ongoing and Focused Professional Practice Evaluation, and other Medical Staff and Hospital committee efforts are performed in a continuous effort to improve the quality of care to patients of the Hospital. These peer review and performance improvement activities are carried out in an informal and collegial manner and address questions or concerns about a member's performance or conduct. These activities may include such actions as the Chief of Staff, a Service Line Leader and/or the President of the Hospital meeting with the member to explain the basis for a question or concern and to give the member an opportunity to respond. At such a meeting, they may in their sole discretion offer the member the opportunity to voluntarily agree to refrain from exercising all or part of the member's clinical privileges until a resolution of the question or concern has been reached. These informal processes are neither disciplinary in nature nor intent nor do they invoke the procedural rights afforded through the formal investigatory processes detailed in this Article. While informal and collegial in nature, these peer review activities and functions, and all minutes, reports, recommendations, communications and actions are covered by the confidentiality provisions of applicable State or federal law providing protection to peer review or related activities. To promote the collegial and educational objectives of this Policy, all discussions and meetings with a Practitioner shall generally involve only the Practitioner and the appropriate Medical Staff Leaders and Hospital personnel. No counsel representing the Practitioner, Medical Staff or Hospital shall attend any of these meetings.

**4.2 BASIS FOR FORMAL REVIEW OF CONDUCT**

The procedures provided in this Article will be invoked whenever it appears that the activities or professional conduct of any member of the Medical Staff:

(a)   Jeopardizes or may jeopardize the safety, best interests, quality of care, treatment or services of a patient, or the safety and best interests of a visitor or employee;

(b)   Presents a question regarding the competence, character, judgment, ethics, stability of personality, including the ability to work cooperatively with others in the provision of safe patient care, treatment and services, adequate physical and mental health or moral character of the member; or

(c)   Violates these Medical Staff Bylaws, Rules and Regulations, the requirements of the Service Line, or Hospital policies, including the Code of Conduct, or constitutes

18

conduct that is, or reasonably probable of being, disruptive to Hospital operations.

## 4.3 INITIATION OF AN INVESTIGATION

An investigation of the conduct of a member of the Medical Staff raising a question under Section 4.2 above will begin only through one of the following:

(a) The Chief of Staff, the appropriate Service Line Leader, or the President of the Hospital may provide written notice of a concern or question, supported by reference to specific activities or conduct alleged, to the Medical Executive Committee. The Medical Executive Committee, after sufficient inquiry into whether an investigation is warranted, may make a written request for an investigation by the Credentials Committee;

(b) The Board of Trustees may make a written request, supported by reference to specific activities or conduct alleged, for an investigation by the Credentials Committee;

(c) The Peer Review Committee may make a written request, supported by reference to specific activities or conduct alleged, for an investigation by the Credentials Committee;

(d) The Credentials Committee, by written resolution, supported by reference to specific activities or conduct alleged, and without a request from the Board or the Medical Executive Committee or the Peer Review Committee may initiate an investigation on its own motion.

## 4.4 INVESTIGATION

(a) The Chair of the Credentials Committee will keep the President of the Hospital and Medical Executive Committee informed in a timely manner of actions taken in connection with an investigation.

(b) All proceedings, records and materials produced by and considered by committees of the medical staff or Hospital during the course of an investigation evaluating the quality, cost of, or necessity for hospitalization or health care, including medical staff credentialing, and any other investigations instituted pursuant to this Article IV, are confidential.

(c) The Credentials Committee will investigate the matter itself or appoint an ad hoc Investigating Committee to do so. An Investigating Committee may include individuals not on the Medical Staff. If the member believes anyone on the Credentials Committee or Investigating Committee is biased and should not participate in the investigation, the member shall promptly notify the Chief of Staff in writing. The Chief of Staff shall them determine, in his/her sole discretion and following any inquiry he/she deems appropriate, whether that person should be excused from the investigation.

(d) The Credentials Committee or Investigating Committee conducting the

investigation may take any steps it deems reasonable including, but not limited to: reviewing relevant documents, including medical records and incident reports; conducting interviews; contacting outside consultants; and requiring an examination or assessment by a health care professional(s) acceptable to it. If an examination or assessment is required, the member being investigated will execute a release allowing the Credentials Committee and any Investigating Committee to discuss with the examining health care professional(s) the reasons for the examination or assessment and authorizing the health care professional(s) to discuss and report the results of the examination or assessment to the Credentials Committee and any Investigating Committee. All fees associated with required assessments or examinations by health care professionals shall be the responsibility of the medical staff member under investigation.

(e)    The member being investigated will be notified during the investigative process of the general nature of the questions being investigated, the general nature of the evidence related to the questions being investigated, and the membership of the Investigating Committee if one has been appointed. The member will thereafter have an opportunity to meet with the Credentials Committee or Investigating Committee conducting the investigation before it completes its investigation. At this interview the member will be invited to discuss, explain, or refute the questions being investigated and/or the evidence. This interview will not constitute a hearing and none of the procedural rights provided in this Policy with respect to hearings will apply, including the right to have legal counsel present.

(f)    The Credentials Committee or Investigating Committee will make a reasonable effort to complete the investigation and issue a written report within 30 days. (If outside consultants are utilized, the period of time needed to seek and obtain the consultants' services shall be added to this thirty (30) day guideline.) This time frame is intended to serve only as a guideline, and does not create any rights for the member to have an investigation completed within any particular time period.

(g)    If an Investigating Committee is used, it shall report its findings to the Credentials Committee, which may include a recommendation. The Credentials Committee may accept, modify, or reject any report or recommendation it receives from an Investigating Committee, or may direct such further investigation as it deems necessary or appropriate.

## 4.5    PROCEDURE FOLLOWING AN INVESTIGATION

(a)    The Credentials Committee will act as soon as is practical after the conclusion of an investigation. Action taken by the Credentials Committee following the conclusion of an investigation may include, but is not limited, to the following recommendations:

(1)    No corrective action;

(2)    Letter of admonition, reprimand or warning;

(3)    Terms of probation, including monitoring requirements or specific requirements of consultation;

(4)   Suspension of clinical privileges until completion or specific conditions or requirements, or suspension of clinical privileges for a specific period of time;

(5)   Limitation of prerogatives related to the practitioner's delivery of safe patient care, treatment or services;

(6)   Reduction or revocation of clinical privileges;

(7)   Suspension of medical staff membership for a specific period of time or without limit of time;

(8)   Revocation of medical staff membership; or

(9)   Other actions or recommendations appropriate to the facts that prompted the investigation.

(b)   If the recommendation of the Credentials Committee would entitle the member being investigated to a hearing as set forth in Article V of this Policy, the recommendation will be forwarded to the Medical Executive Committee and to the President of the Hospital. The President will promptly notify the member, by certified mail , return receipt requested, or by hand-delivery, that includes  (i) a statement of the recommendation or action and the general reasons for it; (ii) notice that the individual has the right to request a hearing within thirty (30) days of receipt of this notice; and (iii) a copy of this Article outlining the right to a hearing as provided for in this policy. The President will hold the recommendation until after the member has exercised or has been deemed to have waived the right to a hearing.

(c)   If the recommendation of the Credentials Committee would not entitle the member to a hearing, the recommendation will be forwarded to the Medical Executive Committee for comment. The Medical Executive Committee may request that the Credentials Committee reconsider all or any part of its recommendation.  After due consideration of a recommendation of the Credentials Committee, the Medical Executive Committee will make a recommendation to the Board for action. If the MEC recommendation would entitle the Medical Staff member to a hearing or if the Board modifies the recommendation of the Medical Executive Committee and such modification would entitle the member to a hearing under Article V of this Policy, the President will promptly notify the member, by certified mail, return receipt requested, of the recommendation or modification, the general reasons for the recommendation or modification and the member's right to request a hearing, and shall include a copy of this Article detailing the hearing rights of the member. The Board will take no final action until the member has exercised or has been determined to have waived the right to a hearing.

## 4.6 PRECAUTIONARY SUSPENSION OF CLINICAL PRIVILEGES

4.6.1 Criteria for Initiation

(a) The Chief of Staff, the Service Line Leader, and the President of the Hospital (or in each case his/her respective designee) shall each, when acting with the concurrence of at least one of the others, have the authority to suspend all or any portion of the clinical privileges of a Medical Staff member whenever it is reasonably believed that the failure to take such action may result in an imminent danger to the health of any individual or class of individuals (e.g. present or future patients or Hospital staff).

(b) A precautionary suspension shall become effective immediately upon oral or written notice to the affected Medical Staff member from any one or more of the individuals listed above in section 4.6(a), which notice shall specify the general grounds for such suspension. If the notice is oral, the member shall promptly be given notice in written form. The member shall also promptly be given a copy of the member's rights, which shall include a meeting with the Credentials Committee pursuant to paragraph (c) below. A precautionary suspension is not in and of itself a final professional review action that is reportable, but rather an interim step to protect patients.

(c) The Credentials Committee shall be notified immediately of any precautionary suspension, and as soon as possible, but no later than ten (10) days after such precautionary suspension, a meeting of the Credentials Committee shall be convened to review and consider the action taken. The purpose of this meeting shall be to determine whether it is reasonable to believe that an imminent danger to the health of any individual or class of individuals (e.g. present or future patients or Hospital staff) actually exists so as to support the continuation of the precautionary suspension. The Chair of the Credentials Committee shall set the date for the meeting in consultation with the affected Medical Staff member. The affected Medical Staff member may address the Credentials Committee during the meeting, but the Medical Staff member may not be represented by legal counsel at this meeting, and in no event shall this meeting constitute a hearing (regardless of whether or not the affected Medical Staff member addresses the Credentials Committee).

(d) Within thirteen (13) days of the imposition of a precautionary suspension, or within such additional time period as the Credentials Committee in its discretion determines to be necessary and reasonable, the Credentials Committee shall recommend modification, continuance, or termination of the terms of the precautionary suspension, or recommend alternative corrective action. Until such time as the Credentials Committee has made a recommendation, the Chief of Staff, the Service Line Leader, and the President of the Hospital (or in each case his/her respective designee) shall, if acting unanimously, have the authority to terminate the precautionary suspension.

1) Unless the recommendation of the Credentials Committee is immediate termination or modification of the precautionary suspension to a lesser

sanction (which sanction does not entitle the Medical Staff member to hearing rights), the affected Medical Staff member shall be entitled to a hearing, as defined and described in Article V of this Policy; however, the terms of the precautionary suspension as sustained or as modified by the Credentials Committee shall remain in effect pending the outcome of any hearing, unless earlier terminated or modified by the Credentials Committee, the Medical Executive Committee, or the Board.

2) A Credentials Committee recommendation to terminate or modify the suspension to a lesser sanction not triggering hearing rights under Article V shall be referred with all supporting documentation or immediate access thereto to the MEC for recommendation to the Board. The terms of that recommendation by the Credentials Committee shall immediately take effect and shall remain in effect pending a final decision by the Board. The Board shall act within thirty (30) days of said referral from the Credentials Committee (or within such additional time as the Board in its discretion determines to be necessary and reasonable) to approve, modify, or terminate the suspension.

(e) Nothing in this section 4.6 shall prevent the initiation of an investigation pursuant to section 4.3 above regarding any events or matters related to any precautionary suspension.

(f) Immediately upon the imposition of a precautionary suspension, the appropriate Service Line Leader or, if unavailable, the Chief of Staff, shall assign to another Medical Staff member with appropriate clinical privileges responsibility for care of the suspended Medical Staff member's patients that are inpatients of the Hospital. The assignment shall be effective until the patients are discharged from the Hospital. The wishes of the patient shall be considered in choosing the substitute Medical Staff member.

(g) The procedures outlined above are deemed to be fair under the circumstances.

## 4.7 AUTOMATIC RELINQUISHMENT OF MEMBERSHIP AND/OR CLINICAL PRIVILEGES

The following will result in automatic relinquishment of Medical Staff membership and/or clinical privileges and will not, unless otherwise expressly provided or required by law, entitle the affected Medical Staff member to the hearing and appeal rights provided for in Article V of this Policy or to any other procedural rights.

(a) State License or Drug Enforcement Administration Certificate

1) Whenever a Medical Staff member's professional license or Drug Enforcement Administration ("DEA") registration certificate is revoked, stayed, restricted, or suspended, that action and its terms shall automatically apply to his/her Medical Staff membership and clinical privileges until the action is resolved and an application for reinstatement of privileges has been approved by the Credentials Committee, the Medical Executive Committee, and the Board.

2) Whenever a Medical Staff member's license expires, the Medical Staff member's

23

clinical privileges shall be automatically relinquished until there is evidence of a licensure renewal.

3)     Whenever a Medical Staff member's DEA certificate expires, the Medical Staff member's right to prescribe, dispense, or administer medications covered by the certificate shall be automatically relinquished until there is evidence of a certificate renewal.

(b)     <u>State or Federal Health Care Programs</u>. Whenever a Medical Staff member has been excluded from participation in any State or federally funded health care program including, but not limited to, Medicaid and Medicare, the member's clinical privileges will be automatically relinquished until the member has demonstrated that the exclusion has been removed

(c)     <u>The Medical Executive Committee Review of Certain Automatic Relinquishments.</u>
As soon as practical after a Medical Staff member's clinical privileges have been relinquished predicated on action affecting the Medical Staff member's professional license, DEA certificate or participation in a state or federal health care program, the Medical Executive Committee shall review and consider the facts upon which the action was predicated. The Medical Executive Committee may then make a written request for a formal investigation by the Credentials Committee pursuant to the procedures in this Article IV.

(d)     <u>Medical Records</u>. A Medical Staff member's privileges to admit patients and to schedule procedures (except with respect to his/her patients already admitted to the Hospital) shall be automatically relinquished for failure to comply with medical record regulations and policies established by the Medical Staff Rules and Regulations or Hospital policies after being given written notice by the Medical Staff Office, and shall remain so relinquished until all delinquent medical records are completed. Failure to complete the delinquent medical records within sixty (60) days after the date a relinquishment became effective pursuant to this Section shall be deemed a Medical Staff member's voluntary resignation from the Medical Staff.

(e)     <u>Professional Liability Insurance</u>. A Medical Staff member's clinical privileges shall be automatically relinquished for failure to maintain the minimum amount of professional liability insurance, if required by the Category of the Medical Staff to which the Medical Staff member is appointed, and shall remain relinquished until the Medical Staff member provides evidence to the Medical Executive Committee that he/she has secured at least the minimum amount professional liability insurance. Failure to provide such evidence within ninety (90) days after the date the automatic relinquishment became effective shall be deemed a voluntary resignation of Medical Staff membership. Medical Staff members on leave of absence are not subject to automatic relinquishment for failure to provide evidence of professional liability insurance.

(f)     <u>Failure to Provide Requested Information</u>. A Medical Staff member's clinical privileges shall be automatically relinquished for failure to provide required information, pursuant to a formal request by the Credentials Committee, the Medical Executive Committee, or the President of the Hospital, until the required information is provided to the satisfaction of the requesting party. For purposes of this section "required information" means physical or mental examinations, information concerning an investigation or disciplinary action by

the Hospital or any state or federal regulatory body, or information concerning a Medical Staff member's resignation from another facility.

(g) <u>Continuing Education Requirements.</u>

1) A Medical Staff member's clinical privileges shall be automatically relinquished for failure to complete the continuing education requirement of Medical Staff Policy 2MS.ADM.1014 and as required elsewhere in the Medical Staff Bylaws.

2) Active, Senior Active, and Affiliate Medical Staff applicants shall complete the Communication in Healthcare seminar as a condition of appointment to the Medical Staff. The clinical privileges of a Medical Staff member in these categories shall be automatically relinquished for failure to complete the seminar within three (3) months after each successive reappointment to the Medical Staff.

(h) <u>Meet with Medical Staff Officers.</u> A Medical Staff member's clinical privileges shall be automatically relinquished for failure to attend any meeting required by a Medical Staff Officer, pursuant to disruptive behavior, physician health issue, clinical concern review, or any other investigative or counseling process, until the Medical Staff member has met with the Medical Staff Officer in a manner sufficient to satisfy the elements of the requested meeting.

(i) <u>Medical Staff Immunization Policy.</u> A Medical Staff member's clinical privileges shall be automatically relinquished for failure to complete the immunization requirements of Medical Staff Policy 2.MS.ADM.1019.

(j) <u>Conviction of a Felony.</u> A Medical Staff member's membership and clinical privileges shall be automatically terminated upon conviction of a felony.

(k) <u>Notice of Relinquishment or Termination and Transfer of Patients.</u> Whenever a Medical Staff member's membership and/or clinical privileges are relinquished or terminated in accordance with this Section, written notice stating the reason(s) for automatic relinquishment shall be provided to the affected Medical Staff member and the Service Line Leader within twenty-four (24) hours of the imposition of suspension. Notice of such action shall also be given by the Chief of Staff to the Medical Executive Committee and the Board at their next meetings. In the event of an automatic relinquishment, except as limited for medical records suspensions, the Medical Staff member's patients shall be assigned to another Medical Staff member by the Chief of Staff. The wishes of the patient shall be considered, when feasible, in choosing a substitute Medical Staff member.

(l) <u>Hospital Information Technology and Other Required Training</u>
A Medical Staff member's privileges will be automatically relinquished for failure to comply with the requirements and timeframes to complete mandatory MEC-approved training or CME related to information technology, or other policies or regulations mandated by the MEC concerning the safe or orderly operations of the hospital after being given written notice by the Medical Staff Office. The automatic relinquishment will remain in force until such training is completed. Failure to complete required training within sixty (60) days after the date a relinquishment becomes effective pursuant to this Section will be deemed a voluntary resignation from the Medical Staff.

**4.8 LEAVE OF ABSENCE**

(a) A member of the Medical Staff who desires to take a leave of absence must submit a written request to the Credentials Committee at least thirty (30) days prior to the commencement of leave. After consideration of the request, the Credentials Committee will make a recommendation to the Medical Executive Committee for recommendation to the Board for final action. A leave of absence may be for a period of time not to exceed one (1) year.

(b) While on approved leave, a Medical Staff member will not have privileges to admit or treat patients, nor have any other of the prerogatives or responsibilities of Medical Staff membership and will not be required to pay dues.

(c) For all leaves other than those for medical reasons, the member may request reinstatement by submitting an application for reinstatement of privileges with the Credentials Committee, including a summary of the relevant activities during the leave of absence, and, if requested, information relevant to current competency and health. After consideration of the application and accompanying materials the Credentials Committee will make a written recommendation concerning reinstatement to the Medical Executive Committee for recommendation to the Board for final action. The Board may approve reinstatement either to the same or a different staff category, and may limit or modify the clinical privileges to be extended to the member upon reinstatement.

(d) Failure, without good cause, to submit the summary of activities or any requested information relevant to current competency and health while on leave shall be deemed a voluntary resignation from the Medical Staff.

(e) If the leave was for the purpose of obtaining treatment for a medical condition or disability, the Medical Staff member may request reinstatement by submitting an application for reinstatement as per the Medical Staff and AHP Health Issues policy (2MS.ADM.1002).

**4.9 CONFIDENTIALITY**

Actions taken and recommendations made pursuant to this Policy are confidential in accordance with applicable legal requirements and such policies regarding confidentiality as may be adopted by the Board. All minutes, reports, recommendations, communications, and actions made or taken pursuant to this Policy are intended to be covered by the provisions of N.C. Gen. Stat. 131E-95 or the corresponding provisions of any subsequent federal or State statute providing protection to peer review or related activities. Furthermore, the committees and/or panels charged with making reports, findings, recommendations, or investigations pursuant to this Policy will be acting on behalf of the Hospital and the Board when engaged in such professional review activities and are "professional review bodies" as that term is defined in the Health Care Quality Improvement Act of 1986.

## ARTICLE V

## HEARING AND APPEAL PROCEDURES

## 5.1    GROUNDS FOR HEARING

(a)    An applicant or member is entitled to request a hearing whenever a final unfavorable or adverse recommendation has been made by the Credentials Committee or Medical Executive Committee, or has been proposed to be taken by the Board without an unfavorable or adverse recommendation from the Credentials Committee or the Medical Executive Committee, regarding the following:

   (i)      denial of initial Medical Staff appointment;

   (ii)     denial of Medical Staff reappointment;

   (iii)    revocation of Medical Staff appointment;

   (iv)    denial of requested initial clinical privileges;

   (v)     denial of requested increased clinical privileges;

   (vi)    revocation or decrease of clinical privileges;

   (vii)   suspension of clinical privileges (other than a precautionary suspension lasting no longer than 14 days during which a review is being conducted to determine the need for a professional review action);

   (viii)  imposition of mandatory concurring consultation requirement;

   (ix)    denial of reinstatement from a leave of absence for reasons related to clinical competence or professional conduct; or

   (x)     as and to the extent provided in the Hospital's Physician/AHP Code of Conduct.

(b)    The following actions do not constitute grounds for a hearing:

   (i)      imposition of any general consultation requirement

   (ii)     requirement for retraining, additional training or continuing education;

   (iii)    a letter of guidance or counsel;

   (iv)    conditions for monitoring or proctoring;

   (v)     a lapse in or decision not to grant or not to renew temporary privileges;

   (vi)    denial of a request for a leave of absence or an extension of a leave or

denial of reinstatement from a leave unrelated to clinical competence or professional conduct;

(vii)    determination that an application is incomplete;

(viii)    determination that an application will not be processed due to a misstatement or omission;

(ix)    determination of ineligibility based on a failure to meet threshold eligibility criteria, a lack of need or resources, or because of an exclusive contract;

(x)    automatic suspension of membership or clinical privileges as set forth in Section 4.7 of this Policy.

## 5.2    REQUESTS FOR HEARING

(a)    <u>Notice of Recommendation or Action</u>. When a recommendation is made or action is taken that constitutes Grounds for Hearing, the individual shall be given notice by the President of the Hospital, in writing, by certified mail return receipt requested or by hand-delivery, that includes: (i) a statement of the recommendation or action and the general reasons for it; (ii) notice that the individual has the right to request a hearing within thirty (30) days of receipt of this notice; and (iii) a copy of this Article outlining the right to a hearing as provided for in this Policy.

(b)    <u>Request for Hearing</u>. An individual shall have thirty (30) days following the receipt of such notice to request a hearing, in writing, and to have said request delivered to the President of the Hospital. If the President of the Hospital has not received a request for a hearing within that thirty (30) days, the individual shall be deemed to have waived the right to a hearing and to have accepted the recommendation or action involved. The recommendation shall thereupon become the final action of the recommending body and shall become effective upon final Board action, or, immediately, if Board action prompted the right to a hearing.

(c)    <u>Time and Place for Hearing</u>. The President of the Hospital shall schedule the hearing and give written notice ("Notice of Hearing") by certified mail return receipt requested or by hand-delivery, to the affected individual of the time, place, and date of the hearing. The date of commencement of the hearing shall be no sooner than thirty (30) days, nor later than one hundred twenty (120) days, from the date of receipt of the request for a hearing, unless specifically agreed to in writing by the parties.

(d)    <u>Notice of Hearing and Witness Lists</u>. The Notice of Hearing shall advise the individual of the general acts, omissions and/or concerns giving rise to the recommendation or action, including, if applicable, a list of medical records being questioned. The Notice of Hearing shall also include a list of witnesses expected at that time to testify at the hearing and a brief summary of the nature of their anticipated testimony. Within ten (10) days after receiving Notice of Hearing, the individual requesting the hearing shall provide to the Hospital a written list of the names of the individuals expected to testify at the hearing and a brief summary of the nature of their anticipated testimony. Additions to the lists of witnesses may be

made, and final witness lists shall be exchanged at least ten (10) days prior to the commencement of the hearing.

(e) <u>Hearing Panel, Hearing Officer</u>. The President of the Hospital, after considering the recommendations of the Chief of Staff (or the Chair of the Board, if the hearing is occasioned by a Board determination) shall appoint a Hearing Panel composed of not less than three (3) members of the Medical Staff. The Hearing Panel members shall be impartial and shall not have actively participated in the formal consideration of the matter at any previous level, although mere knowledge of the matter shall not preclude one from service on the Hearing Panel. The President of the Hospital shall notify the individual of the composition of the Hearing Panel promptly after it is determined.

As an alternative to the Hearing Panel, the President of the Hospital, after consulting with the Chief of Staff (or the Chair of the Board if the hearing was occasioned by a Board determination) may instead appoint a Hearing Officer, who shall be an attorney at law, to perform the functions that would otherwise be carried out by the Hearing Panel. If a Hearing Officer is appointed instead of a Hearing Panel, the President of the Hospital shall promptly notify the individual of the identity of the Hearing Officer. If a Hearing Officer is appointed instead of a Hearing Panel, all references in this Article to the "Hearing Panel" or "Presiding Officer" shall refer instead to the Hearing Officer, unless the context would clearly otherwise require.

## 5.3 HEARING PROCEDURE

(a) <u>Presiding Officer</u>. The President of the Hospital will appoint an unbiased Presiding Officer to preside at the hearing. The Presiding Officer will be attorney at law qualified to preside over a quasi-judicial hearing. The Presiding Officer will have the authority to: conduct a pre-hearing conference with the parties; rule on questions of procedure; rule on the admission and exclusion of evidence, including limits or additions to either party's list of witnesses; participate in the private deliberations of the Hearing Panel, but may not vote; draft the findings and recommendations of the Hearing Panel, as requested by the Panel; and advise the Hearing Panel generally on the discharge of its functions.

(b) <u>Discovery</u>. There is no right to discovery in connection with the hearing. Neither the affected individual, nor his/her attorney, nor anyone else on his/her behalf may contact individuals appearing on the Hospital's witness list concerning the subject matter of the hearing, unless specifically agreed to by Hospital counsel. The individual requesting the hearing will be given, in a timely manner prior to the hearing, upon specific written request, the following information: copies of, or reasonable access to, relevant portions of patient medical records referred to in the Notice of Hearing; reports of experts relied upon by the Credentials Committee, Medical Executive Committee or Board; redacted copies of relevant committee or department minutes; and copies of any other documents relied upon by the Credentials Committee, Medical Executive Committee or the Board. This information will be disclosed to the individual and/or his/her attorney only after signing a stipulation that such documents shall be maintained as confidential peer review material and shall not be disclosed or used for any purpose whatsoever outside of the hearing and any appeal pursuant to Section 5.4 of this Policy.

(c)     <u>Pre-Hearing Conference</u>. The Presiding Officer may require the parties and their counsel to participate in one or more pre-hearing conferences (which need not be in person, at the discretion of the Presiding Officer) to resolve procedural and evidentiary questions or objections in advance of the hearing and to develop and agree upon stipulations to provide for a more efficient hearing by narrowing the issues on which testimony is reasonably required. The Presiding Officer may specifically require that the parties submit at these pre-hearing conferences (or at other times designated by the Presiding Officer): all documentary evidence and exhibits to be submitted at the hearing; any objections to the documents and exhibits to be presented at the hearing by the other party; a final list of names of all witnesses and a brief summary of the nature of their anticipated testimony; and any pre-hearing statements a party may desire to submit. All objections to documents or witnesses to the extent then reasonably known will be submitted in writing in advance of the hearing. The Presiding Officer will not entertain subsequent objections unless the party offering the objection demonstrates good cause. At the sole discretion of the Presiding Officer, witnesses, exhibits and documentary evidence not submitted in advance of the hearing may be excluded from introduction into evidence at the hearing.

(d)     <u>Failure to Appear</u>. Failure, without good cause, of the individual requesting the hearing to appear and proceed at any pre-hearing conference or at the hearing will be deemed to constitute voluntary acceptance of the recommendation or action involved and waiver to any hearing rights, and it will thereupon become the final recommendation of the Credentials Committee or the Medical Executive Committee, as applicable, or the final action of the Board if Board action prompted the right to a hearing.

(e)     <u>Record of Hearing</u>. The Hearing Panel will maintain a record of the hearing by a certified court reporter. The cost of attendance of the court reporter will be borne by the Hospital, but copies of the transcript may be obtained from the court reporter by the individual requesting the hearing only at that individual's expense.

(f)     <u>Rights of the Parties</u>. At a hearing both sides have the right to representation by counsel or other person. Both sides may, subject to reasonable limits determined by the Presiding Officer: call and examine witnesses; introduce exhibits and documentary evidence; cross-examine witnesses; and otherwise rebut any evidence. An individual who requests a hearing and who does not testify in his own behalf may be called and examined as if under cross-examination. Each party has the right to submit a written argument and/or memorandum of law following the presentation of evidence and prior to the close of the hearing, subject to such time deadlines and length restrictions as the Hearing Panel shall determine. In addition, the Hearing Panel may request that such arguments and/or memoranda be filed prior to the close of the hearing.

(g)     <u>Admissibility of Evidence</u>. Oral evidence will be taken only on oath or affirmation administered by any person designated and entitled to notarize documents in this State. The hearing will not be conducted strictly according to rules of evidence. Any relevant evidence, including hearsay, will be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law.

The Hearing Panel may question witnesses, call additional witnesses, and request additional documentary evidence.

(h) <u>Postponements and Extensions</u>. Postponements and extensions of time beyond any time limit set forth in this policy may be requested by anyone but will be permitted only by the Presiding Officer or the President of the Hospital on a showing of good cause.

(i) <u>Burden of Going Forward and Burden of Proof</u>. The Credentials Committee, Medical Executive Committee or the Board, depending on whose recommendation or action prompted the hearing, must initially come forward with evidence in support of its recommendation or action. Subject to the foregoing, the individual who requested the hearing bears the ultimate burden of proving, by clear and convincing evidence, either: (i) that the recommendation or action which occasioned the hearing was arbitrary and capricious or was not supported by substantial evidence; or (ii) that there has been substantial failure to comply with the procedures outlined in this Policy (and/or the Hospital or Medical Staff Bylaws) and that said failure has caused the individual to be denied a fair hearing.

(j) <u>Adjournment and Conclusion</u>. The Presiding Officer may adjourn the hearing and reconvene it at the convenience of the parties. Upon receipt of all oral and written evidence, oral argument if allowed by the Hearing Panel, and any written post-hearing arguments and memoranda, the hearing will be closed.

(k) <u>Deliberations and Recommendation of the Hearing Panel</u>. The Hearing Panel will conduct its deliberations outside the presence of any other person except the Presiding Officer and render a recommendation based upon the evidence, arguments and memoranda presented during the hearing. Within twenty (20) days after the hearing is closed the Hearing Panel will render a written recommendation that will contain findings of fact in sufficient detail to indicate the basis for the Hearing Panel's recommendation on each matter contained in the Notice of Hearing. The Hearing Panel shall recommend in favor of the Credentials Committee, the Medical Executive Committee or the Board, unless it finds that the individual who requested the hearing has proved, by clear and convincing evidence, either: (i) that the recommendation or action which occasioned the hearing was arbitrary and capricious or was not supported by substantial evidence; or (ii) that there has been substantial failure to comply with the procedures outlined in this Policy (and/or the Hospital or Medical Staff Bylaws) and that said failure has caused the individual to be denied a fair hearing. Should the Hearing Panel not recommend in favor of the Credentials Committee, the Medical Executive Committee or the Board, it may recommend that the recommendation or action which occasioned the hearing be reversed, modified or remanded to any committee, body or person for further review and recommendation.

(l) <u>Disposition of Hearing Panel Report</u>. The report and recommendation of the Hearing Panel will be delivered to the Credentials Committee, the Medical Executive Committee, the President of the Hospital, and the Board, and, by certified mail, return receipt requested, to the individual who requested the hearing. The recommendation of the Hearing Panel will be final, subject only to the right of appeal as provided in Section 5.4 of this Policy.

31

## 5.4 APPEAL TO THE Board of Trustees

(a)  <u>Time for Appeal</u>. Within ten (10) days after receipt of the Hearing Panel's recommendation, either party may give notice of an appeal ("Notice of Appeal") to the Board. All Notices of Appeal must be delivered to the President of the Hospital, in writing, either by certified mail, return receipt requested or by hand-delivery to the office of the President, and must include a statement of the reasons for appeal and the facts or circumstances that justify further review. If an appellate review is not noticed in this manner, both parties will be deemed to have accepted the recommendation of the Hearing Panel and it shall thereupon become the final recommendation of the body whose recommendation or action prompted the hearing, and shall be subject on that basis to final review and decision by the Board.

(b)  <u>Grounds for Appeal</u>. The grounds for an appeal from the Hearing Panel recommendation will be: (i) substantial failure by the Hearing Panel to comply with the provisions and/or procedures outlined in this Policy (and/or the Hospital or Medical Staff Bylaws), with that failure resulting in any party being denied a fair hearing; and/or (ii) the Hearing Panel's recommendation being arbitrary and capricious, a result of prejudice, or not supported by substantial evidence.

(c)  <u>Time, Place, and Notice</u>. When a Notice of Appeal is received by the Hospital President, the Chair of the Board (who may act through a designee throughout this process) will, within fifteen (15) days, give both parties notice of the time, place, and date of the appellate review. The date of appellate review will be not less than fifteen (15) days, nor more than forty-five (45) days from the date of receipt of the Notice of Appeal. The date of appellate review may be extended by the Chair of the Board for good cause.

(d)  <u>Appellate Review Procedure</u>.

(i) The Board as a whole may sit as an Appeal Panel or the Chair of the Board may appoint an Appeal Panel composed of not less than three (3) persons, either members of the Board or others, including persons outside the Hospital, to consider the appeal.

(ii) Additional evidence will be accepted only if the party seeking to admit it can demonstrate that such evidence could not have been made available to the Hearing Panel in the exercise of reasonable diligence. The Appeal Panel may accept such additional oral or documentary evidence in the same manner as provided herein for the Hearing Panel proceedings (i.e. having the same test for admissibility, the right of cross-examination, etc.).

(iii) Each party will have the right to present a written argument and/or memorandum of law in support of its position on appeal. The Board Chair shall, in his/her sole discretion, determine the length, the sequence (if any) and the deadlines for the submission of such arguments and memoranda. These determinations shall be made by the Board Chair on a case-by-case basis, and any determinations by a Board Chair in any particular appeal shall not be

considered as precedent for any other appeal. In its sole discretion, the Appeal Panel may allow each party or its representative to appear personally and make oral argument. Following receipt of the written arguments and memoranda, and any additional evidence or oral arguments allowed, the Appeal Panel will conduct, at a time convenient to itself, deliberations outside the presence of the parties. If an Appeal Panel other than the Board as a whole is appointed, the Appeal Panel will present to the Board its written recommendation as to whether the Board should affirm, modify, or reverse the recommendation of the Hearing Panel, or remand the matter to the Hearing Panel or any other body or person for further review and recommendation.

(iv) Any questions concerning procedural details will be decided by the Board Chair on a case-by-case basis, and any such decisions by a Board Chair in any particular appeal shall not be considered as precedent for any other appeal. The parties may stipulate in writing to additional procedural details, subject to the approval of the Board Chair.

(e)     Final Decision of the Board. Within thirty (30) days after the conclusion of the appellate review proceedings, the Board will render a final decision in writing. The Board may affirm, modify, or reverse the recommendation of the Hearing Panel, or remand the matter to the Hearing Panel or any other body or person for further review and recommendation. If the Board remands the matter for further review and recommendation, the review will be conducted and a recommendation will be submitted to the Board within a time frame set by the Board and will not exceed forty-five (45) days, unless the parties agree to the contrary. If the Board remands the matter for further review and recommendation, the Board will render its final decision in writing within thirty (30) days after receipt of the remanded recommendation. Notice of the final decision of the Board will be provided to the affected individual by certified mail, return receipt requested, and to the Chairs of the Credentials and Medical Executive Committees.

(f)     Right to One Hearing and One Appeal Only. No applicant or Medical Staff member is entitled to more than one (1) hearing and one (1) appellate review on any matter that has been the subject of adverse action or recommendation. If the final Board action is to deny initial Medical Staff appointment or reappointment to an applicant, or to revoke or terminate the Medical Staff appointment and/or clinical privileges of a member, that individual may not apply for Medical Staff appointment or clinical privileges at this Hospital for a period of five (5) years after the date of the Board's final action unless the Board provides otherwise.

# ARTICLE VI

## AMENDMENTS

The amendment process for this Policy is set forth in the Medical Staff Bylaws.